MISSISSIPPI MILLS COMPANY *v.* E. C. SMITH ET AL.

| 69 | 299 |
|----|-----|
| 75 | 586 |
| 69 | 299 |
| f95 | 40 |

1. WATER-COURSE.  *Polluting stream.  Prescriptive right; how limited.*

   The right secured by prescription to pollute the waters of a stream, must be limited by the character and extent of the right exercised during the prescriptive period.  For any increase causing material injury to riparian owners, damages may be recovered.

2. SAME.  *Manufacturing companies.  Public policy.*

   The public policy of encouraging manufactories does not go to the extent of exempting a manufacturing company from liability where, by artificial means, it changes the natural character of the water of a stream, and causes it to flow in a polluted condition upon or through the lands of persons, to their injury.

3. POLLUTING WATER-COURSE.  *Injury to farm.  Measure of damages.  Evidence.*

   In an action for damages to plaintiff's farm, caused by the pollution by the defendant of the water of a stream traversing it, the injury not being necessarily permanent, it is error to allow evidence of the difference between the value of the farm with the stream clear, and its value with the stream polluted.

4. SAME.  *Evidence.  Immaterial error.  Instruction.*

   But the error in the admission of such testimony will not cause a reversal of a judgment in favor of plaintiff, if the instructions to the jury announce the correct standard for measuring the damages, and the amount of the verdict shows a disregard of the incompetent evidence.

5. EVIDENCE. *Competency.* *General objection.*

 Evidence competent for any purpose should not be excluded on a general objection.

FROM the circuit court of Copiah county.

HON. J. B. CHRISMAN, Judge.

Action by appellee against appellant for damages. Plaintiff recovered judgment for $250. Motion for new trial overruled, and defendant appeals. The facts are stated in the opinion.

*J. S. Sexton,* for appellant.

1. This action is brought for damages for *polluting* the water flowing through plaintiffs' land. There is no complaint that defendant *increased* the amount of water flowing in the stream, and thus caused the lands to overflow. The issue being thus confined to the damage caused by pollution, it is manifest the evidence did not entitle plaintiffs to recover. While water from other sources has been diverted into the stream, and the quantity increased, it is conclusively shown that the proportion of deleterious matter has been diminished. It is admitted that the prescriptive right to pollute is proven. Plaintiffs must therefore show that defendant not only uses materials different from those formerly employed, but must show a greater amount of pollution and injury from the use of new material. Gould on Waters, § 346.

As to appellant's right to change the use acquired by prescription, see Angell on Water-courses, §§ 400, 401.

2. It was error to admit evidence of the special damages not claimed in the declaration, such as the destruction of a valuable spring, the effect that the water had upon the meat of a hog killed, and such other circumstances. No damage had been claimed because of such injuries. Gould on Waters, § 486; 1 Chitty on Pleadings, 411; 1 Suth. on Dam., 763; 11 Gray, 358; 64 Me., 360; 47 Cal., 165. For the same reason, it was error to admit evidence of injury to health of persons

along the stream.   No damages had been claimed because of this.

3. The instructions given for plaintiffs were erroneous.   In fact, they ignored the right of defendant to divert the water of the stream without license of the lower proprietors (Gould on Waters, § 213; 39 Am. Dec., 220; 23 *Ib.*, 504); to increase the volume of water by draining into it (86 Am. Dec., 521); and to straighten the channel of the stream upon its own land, and thus improve its property.   Since plaintiff had the prescriptive right to befoul the stream, it had the right to straighten the stream, and thus cause the water to flow more rapidly.

4. Every riparian owner may use the water of a stream for the purpose of manufacturing in a reasonable way, and what is reasonable is a question for the jury.   67 Am. Dec., 727; 79 *Ib.*, 745; 28 Vt., 459.

5. It is of public importance that the proprietors of useful manufactories shall be held responsible only for appreciable injury caused by their works, and not for slight inconveniences or occasional annoyances.   *Sanderson* v. *Coal Co.*, 86 Pa. St., 411.

6. It was error to permit evidence of the diminished value of the farm.   If damages are recoverable, the true criterion is the diminution of the fair rental value of the property. 3 Suth. on Dam., 372.


*R. N. Miller*, for appellees.

There is only one case in American jurisprudence holding that an upper riparian owner may materially impair the use of the water to a lower riparian owner, and that the rights of the latter must yield to the necessity of the community in maintaining useful enterprises; that is *Sanderson* v. *The Penn. Coal Co.*, 86 Pa., 401, and the same case 113 Pa., 126.   That case, decided by a divided court, is opposed to all the authority on this subject.   The water rights of a private citizen cannot be interfered with without compensation.   Lead. Cas. Am.

L. Real Prop., 318; Cooley on Torts, 587; 44 Am. Rep., 194; 39 *Ib.*, 785; 3 Am. St. Rep., 788; Gould on Waters, 204, 220, 401–407.

There being no question in this case that the use to appellees was absolutely destroyed, the only remaining matter was the amount of damages. The difference in rental value of the land is not the measure of damages. Land might not have any rental value, or it may never have been rented, but the owner cannot be suffered to go without compensation if the value of the land is destroyed.

Every increase of pollution is a new cause of action. Moak's Underhill on Torts, 693. In view of the increase in the pollution of the stream within the few years preceding the suit, the defendant cannot claim a prescriptive right.

As to the measure of damages, see 23 N. E. Rep., 621; *Ferris* v. *Wellborn*, 64 Miss., 29; *M. & T. R. R. Co.* v. *Archibald*, 67 Miss., 38; 50 Ill., 24.

The verdict of the jury shows that not even the damage resulting from the decrease in the rental value was awarded. If, therefore, there was error in admitting evidence of the diminished value of the farm, it was not prejudicial.

COOPER, J., delivered the opinion of the court.

The appellees brought this suit to recover from the appellant damages for polluting the waters of a small stream which runs across their lands. A map showing the location of the stream, and its several branches before it reaches the land of the appellees, seems to have been introduced in evidence in the court below, and several witnesses were examined in reference thereto; but this map is not in the record, and, if it were, we would be unable to apply the testimony of the witnesses to it, because of the indefinite manner in which the locations are spoken of. It is manifest that this court can form no opinion of the meaning of a witness, when the bill of exceptions states only that, "the witness explained the map to the jury," or testified that the stream entered the land

of the plaintiff "here" and runs "here," and that a ditch was cut "there" or might be cut "here," etc., etc. While it may be true that the bill of exceptions contains all the evidence given in the court below (except the map), if the word evidence be taken as referring only to spoken words, it is evident that it does not put this court in possession of all the facts upon which the jury acted. We have adverted to the defective character of the bill of exceptions here, not because it is material in this case, but because we have almost invariably found the same character of defect in cases where maps and plats are introduced in evidence, since the introduction of the stenographic report instead of the ordinary bill of exceptions. If the practice is persisted in, some appellant will some day have an affirmance in this court, on the ground that it is impossible to say what facts were developed in the court below.

The evidence in this case discloses that the plaintiffs are the owners of a tract of land through which a small stream of clear and pure water originally ran; that on one of the branches of this stream, above them, the defendant company erected a cotton and woolen mill more than twenty years ago, which mill is located at or near some springs from which this branch of the stream takes its origin. The defendant dug a pond about the springs, and dammed up the water they supplied, and with a large pump forced the water from the pond into its dye-house and through the closets in its mills. The water, having been used in flushing the closets and in dying the cloths manufactured and washing the wool used by the company, is returned to the stream, below the pond, and from thence flows into the stream on the plaintiffs' land. This use of the water commenced more than twenty years ago, and has been continuous from that time to the present.

The plaintiffs, however, contended and introduced evidence tending to prove, that until less than five years before the institution of this suit the stream below the pond was small and feeble, and its bed crooked and filled with large holes, in which

the water would, to a great degree, stagnate, and deposit much of its impurity before reaching their lands; and also that the banks of the stream were not well defined, and in some parts of the defendant's land it spread out over a flat, on which much of the polluting matter was deposited; that the defendant, within that period, had, for the purpose of accelerating the flow of the water and preventing the deposits in the bed of the stream, on its land, or on the flat, dug a ditch, by which the channel of the stream on its land was straightened, the result of which was that the befouled water was hastened to the stream on the land of plaintiff; that before this ditch was cut, the stream and flat on defendant's land was much polluted and obnoxious to sight and smell, which was greatly obviated by cutting the ditch; that before the ditch was cut, plaintiffs suffered but little inconvenience or injury because of the pollution of the water, which came upon her land only in small quantities, except when the stream was flooded by rains, and quickly passed away; but that, since the cutting of the ditch the foul and polluted water, continuously and in large quantities, was passed into the stream on their land, rendering its water unfit for any purpose and creating a stench throughout its course.

It was also proved, both by witnesses for the plaintiff and defendant, that, within ten years before the suit, the defendant company had considerably increased its capacity and the number of its employes, by whom the closets were used; and that, for the purpose of securing an increased supply of water, the defendant had pumped and piped water from Ford's creek, a stream over a mile away, the water from which would not naturally come through the plaintiff's land; that this water from Ford's creek was used for the same purposes as that taken from the pond, and, after such use, was delivered through the ditch cut by defendant in the stream on plaintiffs' land.

The defendant's evidence tended to show that the water of the stream was less polluted than the plaintiffs claimed it

to be; that the pollution was the same in character and less in.degree than it had been at any time during the past twenty years, for, while the quantity of water had been increased, the polluting matter was less per gallon than before; that the ditch cut by it was only to straighten the stream on its own land, and did not have the effect, nor was it cut for the purpose, shown by the witnesses for the plaintiffs.

This statement of the material evidence fairly presents the facts upon which the plaintiffs contend that a right of recovery is shown, while the defendant claims that none should have been permitted.

The testimony of the plaintiffs and defendant, while in some respects conflicting, presents in the main substantially the same condition of affairs.

The defenses relied on by the defendant company are, first, that a right to pollute the stream has been shown to exist by prescription; second, that the use to which the water was put by it was a reasonable one, in view of the character of its business, and that the right of an individual to have pure water must yield to the policy of the state and the public of encouraging great manufacturing establishments, which cannot exist if forbidden to befoul the water which it necessarily uses in its works, or to deliver it, when thus necessarily polluted, along the natural water-courses.

The plaintiffs, on the trial, conceded the right of the defendant to pollute the waters to the extent to which that right had been exercised until within five years of the commencement of their action, but contended that the right now claimed was materially different in character and degree from that which the defendant could exercise under its prescriptive claim.

Upon this point we think the law and the facts are with the plaintiffs—at least, that upon proper instructions as to the law, the jury found a verdict for the plaintiffs, which is abundantly supported by the evidence. *Crossly* v. *Lightowler*, L. R., 2 Ch. App. Cas., 478; *McCallum* v. *Germantown Water*

*Co.,* 54 Penn. St., 40; *Jones* v. *Crow,* 32 Penn. St., 398, and *Holsman* v. *Boiling Spring Bleaching Co.,* 14 N. J. Eq., 335, were all cases very similar in their circumstances to the case at bar. In each of them a right by prescription to foul the waters in which the plaintiff had an interest, by depositing dye-stuff therein, was claimed; in each the right to somewhat pollute was claimed to warrant pollution to a greater extent. But the courts held that the right secured by prescription was limited by the *character* and *extent* of that exercised during the period of prescription, and that, for any increase causing material injury, an action could be brought. The facts of this case, as found by the jury, bring it within the rule announced in these cases.

In support of the proposition that the plaintiffs cannot recover in this suit because the water was polluted by a manufacturing company, and that the right of the plaintiffs must therefore be determined by a different rule than would be applied if the injury had been done by one not a manufacturer, the defendant relies upon the case of *The Penn. Coal Co.* v. *Sanderson,* 113 Pa. St., 126.

That case had been before the supreme court of Pennsylvania on three previous writs of error, in each of which it had been determined that the plaintiff showed a right of recovery. 5 Norris, 401; 13 Norris, 302; 6 Outerbridge, 370.

On the fourth writ of error, and upon substantially the same facts, a contrary conclusion was reached. But the decision on the last writ of error is not that a manufacturing company, more than any other person, may pollute the waters of a stream without liability to others having a right to the use of the water flowing therein. On the contrary, the opinion is based upon the express declaration of the court that the character of the water had not been changed. The action was by Sanderson against the coal company for polluting the waters of Meadow Brook by discharging therein the waters from its mine. The court said: "It will be observed that the defendants have done nothing to change the character of

the water or its purity, save what results from the natural use and enjoyment of their own property. They have brought nothing on the land artificially. The water, as it poured into Meadow Brook, is the water which the mine naturally discharges. Its impurity arises from natural, not artificial, causes. The mine cannot, of course, be operated elsewhere than where the coal is naturally found, and the discharge is a necessary incident to the mining of it."

The distinction between that case and this is apparent. In that, the mining company, in the ordinary use of its property, opened up a flood of water which, in its natural state, flowed into the brook, and, being naturally injurious, polluted the brook.

In this case, the defendant company, using water in which it had a limited right, and to which the plaintiffs, after a reasonable use thereof by the defendant, had an equal right, by artificial means changed the very nature and character of the water, and, instead of permitting it to flow to the plaintiffs in beneficial condition, poured it upon them, according to their witnesses, poisoned and putrescent.

For this, a right of recovery manifestly existed, unless the defendant had acquired the right by prescription so to do. The verdict of the jury settles that claim against it.

The plaintiffs, over the objection of the defendant, was permitted to prove that the water from the stream had siped into a spring, near its border, rendering it unfit for use; and that, when it overflowed its banks, the adjacent land was rendered unfit for cultivation, and the crop thereon destroyed; that, on one occasion, a hog that had been in the stream was killed for meat, and its flesh found unfit for use, and probably other circumstances of like character. The objection taken to the testimony was general, but we are now informed that the ground of objection is that no damages were claimed in the declaration for the injuries thus proved.

We do not think this testimony was introduced by the plaintiffs for the purposes supposed by the defendant. No

effort was made to prove the value of the spring, or the hog, or the injury to the land or crops. The controversy of the parties was as to whether the water, as polluted, was poisonous and injurious. The plaintiff introduced much evidence to show that it was; the defendant much to show that, though the water was discolored, it was wholesome, and fit for use by man and beast, many of its witnesses testifying that their stock were accustomed to drink it, and some that they themselves had done so. The testimony objected to was competent and relevant, not for the purpose of proving specific damages to be awarded by the jury, but as tending to show the harmful character of the water by reason of its pollution. The rule is well settled that where testimony is competent for any purpose, it will not be excluded on a general objection. If the defendant had desired to do so, he could have limited the effect of the testimony to the extent to which it was competent; but it is not permissible to reserve a general objection to such evidence.

The court should not have permitted the plaintiffs to prove the difference in the value of their farm with a clear stream on it and with that polluted as it was. The injury is not of a permanent character, and will not, in the course of nature, continue after its cause shall be removed. It must be assumed that the defendant will cease to infringe upon the rights of the plaintiffs, and, if it does not, recovery must be had in successive suits. The error in the admission of this evidence would cause a reversal of the judgment, but for the fact that by the tenth instruction given for the defendant the jury was instructed not to find, in any event, the difference in the value of the place with an unpolluted and a polluted stream on it, and the further fact that the meager verdict rendered was evidently reached by disregarding the incompetent evidence.

*The judgment is therefore affirmed.*