## HARVEY *v.* ILLINOIS CENT. R. CO.

[72 South. 273.]

1. WATER AND WATER COURSES. *Surface waters. Discharge. Railroad companies.*

Surface water may be appropriated to his own use by the land-owner, or he may expel it from his land, surface water is regarded as a common enemy, which every proprietor may fight or get rid of as best he may; but a landowner has no right to rid his land of surface water by collecting it in artificial channels and discharging it through or upon the land of an adjoining proprietor.

2. SURFACE WATERS. *Discharge. Railroad companies.*

Where a defendant railroad, owning a right of way on an embankment over plaintiff's lands, gained by prescription the right to collect surface waters on one side and discharge it through culverts to the other side, this right being limited to the right exercised during the prescriptive period, the easement thus acquired could not be enlarged to authorize the construction of additional culverts, or an increase of the capacity of those in use, causing damage to plaintiff's land, by the discharge in a shorter period of the water collected.

APPEAL from the circuit court of Madison county.
HON. W. H. POTTER, Judge.

Suit by George Harvey against the Illinois Central Railroad Company. From a judgment for defendant, plaintiff appeals.

The facts are fully stated in the opinion of the court.

*Powell & Thompson,* for appellant.

*Mayes, Wells, May & Sanders,* for appellant.

COOK, P. J., delivered the opinion of the court.

The declaration in this case was filed in the circuit court of Madison county by George Harvey, appellant here. The declaration avers that some forty-five or fifty years ago a railroad was constructed from Canton to

Jackson, Miss.; that some fifteen or twenty years before the institution of this suit the appellee railroad company either purchased or leased the line in question; that said line of railway five miles south of Canton runs through the lands of plaintiff, which lands he had owned for more than twenty-five years; that the natural flowage of the surface waters falling on said land was from the west to the east. The declaration further avers that when the railway was originally constructed the embankment made across the land obstructed the flowage of the water, and the same was thereby congregated on the west side of the railroad; that in order to relieve such congested flowage of water, and to relieve the land on the west side from the backwater impounded by the railroad embankment, the railroad company constructed two culverts under the right of way to allow the impounded water to flow as it would have naturally done. It is further charged that, in order to take care of the water flowing through the culverts made by the railroad company, plaintiff dug two ditches, which ditches accommodated the water flowing through the railroad culverts. The culverts remained as originally constructed until 1912, and, being of comparatively small dimensions, the water on the west side of the right of way, after heavy rains, was ponded on the west side of the railroad's right of way and gradually let through the culverts, and was easily cared for by plaintiff's ditches on the east side. In 1912 the railroad company, defendant in this suit, greatly enlarged the culverts, making them about double their original size, so that the water passing through the culverts was carried more rapidly and in larger quantities. The ditches constructed by plaintiff to care for the original flowage of the water through the culverts could not accommodate the increased waters passing through the larger culverts, and plaintiff's lands were thereby and because of the increased flowage greatly damaged.

Defendant demurred to this declaration, and the trial court sustained the demurrer. The grounds of the demurrer were:

"(1) If the plaintiff has suffered damages, it shows that it is *'damnum absque injuria.'*

"(2) The declaration shows that defendant only did what plaintiff could have compelled it to do; that is, to so enlarge the culverts to prevent the water from standing on his land on the west side of its track.

"(3) It shows no facts that state any cause of action, or from which a cause of action can be inferred.

"(4) It shows that this defendant had acquired an easement over the land of plaintiff on the east side of its track to flow the waterfall or drain the surface water through its culverts.

"(5) It shows that the land of plaintiff only overflowed in case of heavy rains, and that if he was damaged it was caused by the act of God, and the natural elements, over which defendant exercised no control.

"(6) It shows that the roadbed and original culverts were constructed fifty years ago, and the presumption it that any damages now sued for were compensated for at that time to the owner of the land under condemnation proceedings. The drainage of surface water is one of the legal incidental damages which is assessed in condemnation proceedings.

"(7) The declaration shows that the water passing through the culverts was surface water, or such as fell when it rained upon the watershed west of the track or embankment, and no more surface water passes through the culverts than formerly passed through the old culverts; the amount of water being the same, but the passing of it being of shorter duration.

"(8) For other causes appearing upon the face of the declaration and to be assigned at the hearing."

The argument is made by appellee that the declaration was demurrable because the averments of same clearly showed that the railroad company was

between two fires: If it did not enlarge the culverts, it would be sued for ponding the water on the west side; and when it sought to escape from this dilemma, by enlarging the culverts, it was immediately sued for damage caused thereby to the land of plaintiff on the east side. Plaintiff challenges the soundness of this assumed situation by admitting that the defendant, by the lapse of time, had secured an easement to congregate the waters on the west side and to discharge the waters so accumulated through the culverts as originally constructed.

We believe that the plaintiff's view of the relative position of the parties to this controversy is substantially correct. However, this is not a suit instituted or threatened for impounding the waters on the west side; but, from the plaintiff's declaration, he is seeking to recover damages for an alleged enlargement by the defendant of an easement, acquired by prescription, to congregate the water and discharge same through artificial conduits upon plaintiff's lands.

By the recognized law of this state surface water may be appropriated to his own use by the landowner, or he may expel it from his land. "Surface water is regarded as a common enemy, which every proprietor may fight or get rid of as best he may; but a landowner has no right to rid his land of surface water by collecting it in artificial channels and discharging it through or or upon the land of an adjoining proprietor." Gould on Waters (3d Ed.) section 271. So in this case the railroad company, when it constructed its right of way through the lands of plaintiff, had no right to collect the water falling on the west side of its tracks, and discharge it upon the lands on the east side through the culverts, to the hurt of the proprietor on the east side.

But either by an express grant, or by the lapse of time a grant will be presumed, the railroad company acquired the right to discharge the water through the

original culverts; but, we think, this right did not carry with it the additional right to construct two more culverts, or to double the capacity of those already in use. ''Rights gained by prescription are limited in extent by the previous enjoyment, and cannot be varied to the injury of others.'' Gould on Waters, section 342. We are unable to distinguish the rights of railroad companies from the like rights of ordinary adjoining proprietors. The right obtained by the railroad to collect and discharge the water through the culverts must be limited by the character and extent of the right exercised during the prescriptive period. *Miss. Mills Co.* v. *Smith,* 69 Miss. 299, 11 So. 26,   30 Am. St. Rep. 546.

This case, as made by the declaration, is not a case based on the negligent contruction or maintenance of the railroad. It is simply a case where the railroad has enjoyed for many years the privilege of gathering the surface water on the west side of its track and to assemble the water so gathered and discharge the same through and under its tracks by the use of artificial drains of a certain capacity. This privilege and claim of right was acquiesced in by the adjoining proprietor. Not content, the railroad company has enlarged its artificial contrivances twofold. It says that this change entailed an increased burden on plaintiff, it is true; but plaintiff may not complain, because he does not charge it with negligence. There is no question of negligence involved. According to the averments of the declaration there was a deliberate invasion of plaintiff's land. His land was greately damaged, and it is of no consequence when the damage accrued. The culverts may be of perfect construction, and the utmost care may have been exercised to make the culverts marvels of engineering skill, and yet the adjoining proprietor has a right to complain.

*Reversed and remanded.*