POMPEY LAKE DRAINAGE DIST. *et al* *v.* McKINNEY LAKE DRAINAGE DIST. *et al.*

(Division B. Feb. 11, 1924. Suggestion of Error Overruled March 24, 1924.)

[99 So. 387. No. 23676.]

WATERS AND WATER COURSES. *Prescriptive rights in artificial drain limited to rights enjoyed during prescriptive period.*

An artificial water course may exist under such circumstances and for such length of time as for riparian purposes it will be treated as a natural water course. But ordinarily rights acquired by prescription will be limited to conditions existing and rights enjoyed during the prescriptive period, and where an artificial drain takes only a portion of the water from the natural channel during the period of prescription it cannot be enlarged so as to take a materially larger part of the water from such natural water course and divert it into an entirely different water course, to the injury of property owners on such other stream, without the payment of proper compensation.

APPEAL from chancery court of Tunica county.

HON. C. L. LOMAX, Chancellor.

Suit by the Pompey Lake Drainage District and others against the McKinney Lake Drainage District and others. From a decree for defendants, plaintiffs appeal. Reversed and judgment rendered.

*Holmes & Sledge,* for appellants.

*Charles Clark* and *Dulaney & Jaquess,* for appellees.

Argued orally by *Herbert Holmes* and *N. H. Sledge* for appellants, and *Charles Clark* and *J. W. Dulaney,* for appellees.

[NOTE:—No briefs now on file for either side.]

ETHRIDGE, J., delivered the opinion of the court.

The Pompey Lake drainage district by its commissioners, the Indian Creek drainage district No. 1 by its commissioners, and certain individuals residing or owning property in such districts, filed their bill against the McKinney Lake drainage district and the commissioners of such district, seeking to restrain them, the said McKinney Lake drainage district, from deepening and widening the channel of Irish ditch, which is an artificial stream out of McKinney Lake to the south connecting the headwaters of White Oak bayou with McKinney Lake, and from deepening and widening the channel of the said streams so as to empty the waters that collect and empty into McKinney Lake into the channels of the complainant drainage districts. The McKinney Lake drainage district is the organization of a large territory into a drainage district to drain the lands lying east of the levee of the Mississippi river in Tunica county and extending from the Yazoo & Mississippi Valley Railroad westwardly to the said levee from the point described in the bill near Holly Ridge. Irish ditch is an artificial channel or drain dug some sixty years ago by a body of Irishmen, just for what purpose or for what parties does not appear. The ditch at present carries one hundred and twenty-five cubic feet of water per second, and under the proposed improvement would carry approximately one thousand cubic feet per second. The facts necessary for a decision of the cause are stated in the opinion of the chancellor as folows:

"McKinney Lake drainage district is a drainage district organized in Tunica county for the purpose of draining a large area of land, a large part of which lies in what is called McKinney Lake basin; there are about three hundred and twenty thousand acres in the tract of land to be drained.

"After the organization of the district the commissioners of the Pompey Lake drainage district, together with the commissioners of the Indian Creek Drainage District and several large landowners, owning lands in the

last two mentioned districts, filed a bill in the chancery court of Tunica county, and in said bill alleged that there was a well-defined ridge east of the McKinney · Lake drainage district that by nature constituted the McKinney Lake basin as a separate and distinct watershed, and that no waters flowed from said area southeasterly, or easterly from said basin; that the construction of said district would divert waters that did not ordinarily and naturally flow into Coldwater river, and that if the defendants were permitted to carry out their proposed plans it would greatly damage the said Pompey Lake and Indian Creek drainage districts by emptying large quantities of water into certain improvements made and contemplated to be made by them. Defendants demurred, and the demurrer was overruled. By agreement the case was tried before the chancellor in vacation, and the question of whether or not the defendants should be permanently enjoined from the construction of their improvements was tried on the merits.

"The facts are as follows:

"The western part of the territory embraced in the McKinney Lake drainage district lies in what is called McKinney Lake basin. In this basin is a long narrow lake into which various bayous and channels flow, and the original outlet of said lake was a well-defined, and still well-defined, natural channel which emptied into the Mississippi river during low water.

"Running along the eastern rim of this basin is a ridge, at the upper end of which, near the place of R. L. Flagg, there is a depression in this rim, through which, for a certain distance east of the rim, the waters flow into the basin; also, during extreme high water in the Coldwater river, waters from the Coldwater river flow into this basin. At the lower end of this basin there is a small bayou, called by some Boggy bayou, and by others Little White Oak bayou, which at its western terminus connects with McKinney bayou, and then extends easterly for some distance, having well-defined banks, and

then into what is called the flat woods where there is no well-defined channel, and then it forms into a well-defined channel with banks just a short distance from the head of White Oak bayou at the point where Irish ditch intersects at its eastern or southern end with White Oak bayou. The control point in Boggy bayou is at or near a small bridge shown on the map; west of this point the water flows towards McKinney bayou, and east of this point it flows towards and into White Oak bayou and thence to Coldwater river. There is also a large canal or ditch which intersects this rim above mentioned, called Irish ditch, that connects and brings the water from this basin to White Oak bayou.

"Some time in the '50's the Yazoo levee board built a levee across McKinney bayou, thereby shutting off this natural drain into the Mississippi. At first the levee board placed a culvert under the levee to drain this basin; but, after the levee had broken at this point once or twice, they discontinued the culvert and then placed a syphon at this point. The syphon proved ineffectual, and the board then placed a pump there, which is still there, and runs at certain times of the year. This, on account of its being small, has proved ineffectual. Some time in 1860 or 1861 there was cut a large ditch or canal from this basin about three thousand feet to White Oak bayou, which said bayou is the natural drain for all of the lands in its vicinity and which runs finally into Walnut Lake and thence the waters flow into Coldwater river. At the point on the map where my initials appear, 'C. L. L.,' the water was flowing on that date towards White Oak bayou and the lands in the district in that vicinity drain in that direction. There was also a large volume of water flowing through Irish ditch, on the same day, from this McKinney Lake basin.

"South of this district there is still a well-defined ridge between practically all of the McKinney Lake basin and Moon Lake. Underlying this ridge there is a stratum of quicksand which makes drainage in that direction

practically impossible on account of the expense, and taking that direction there would be more of a diversion of waters than by adopting the route contemplated. The proof further shows that it would be much more expensive, and not as effective, to pump this water across the levee that accumulated in this basin. The proof further shows that a great deal of seep water comes into this basin when the Mississippi river is high and that this water will also flow out through the contemplated improvements. The proof further shows that at present there is flowing from this basin through Irish ditch and into White Oak bayou about one hundred and twenty-five cubic feet of water per second, and that the contemplated improvements will make Irish ditch and White Oak bayou carry about one thousand cubic feet per second at its maximum; some of the engineers say that only about seven hundred and fifty cubic feet per second maximum will flow through it. The waters that flow through this ditch and the waters which will hereafter flow through it will flow through White Oak bayou into Walnut Lake and thence into Coldwater river. The proof further shows that in high water the waters from this basin flow through Boggy bayou and thence into White Oak and thence to Coldwater river. The contemplated improvements will take all of this water into Walnut Lake, the plan being to deepen Irish ditch about nine feet and to widen same and also to deepen, clean out and widen White Oak bayou. Walnut Lake has two or three channels that run into Coldwater river, one being Brushy bayou, which the Pompey Lake drainage district expects to deepen and widen as a part of the improvements contemplated, and the contention of complainants is that the bringing of the waters from McKinney Lake basin will greatly impair the efficiency of the improvements contemplated by them on Brushy bayou.

"The proof further shows that the levee across McKinney bayou is absolutely necessary for not only the protection of the lands of the complainants and defend-

ants, but for all of the lands in the Yazoo, Coldwater, and Mississippi delta from the overflow of the Mississippi river, and that the landowners in this basin to make their land valuable and useful for agricultural purposes must have some outlet for the rain waters that fall in this territory.

"The questions in this case are whether or not Boggy bayou is such a channel as can be improved and deepened, and whether or not Irish ditch, a channel dug or improved by the hands of man some sixty years ago, has by virtue of its age and long-continued usage as a water course become a natural water course. If these questions are answered in the affirmative, then the defendants have a right to construct their improvements, because Irish ditch connects with White Oak bayou and is a ditch or water channel about three thousand feet long and connecting with McKinney Lake basin.

"The proof shows that water flows from this basin through Irish ditch whenever the water in the basin is higher than the mouth of this ditch, and that is practically every time they have a heavy rain. The proof further shows that Irish ditch lies wholly in the territory embraced in this drainage district and that none of the property owners contiguous to Irish ditch object to the alteration and improvement of same.

"Following the rule where waters flow in a well-defined channel and have a permanent supply, as the proof shows Irish ditch is and has, Irish ditch is necessarily a well-defined channel or water course. While it is true that it was originally dug by the hand of man, yet its age, sixty years or more, and its long-continued usage as such, and its connection originally with White Oak bayou, a natural water course, has ripened, according to our view from the authorities examined, into a natural water course with all of the incidents thereto attached. Being a natural water course and the natural drainage for this territory, we see no reason why the same should not be deepened and improved.

"Further, on account of the tendency of the later cases to permit the piercing of natural barriers so as to permit the waters from a pond or basin to run off through a natural depression, or to suffer a deepening of a natural outlet, and as their waters are not diverted from their natural course, which course has been the same for over sixty years, and on account of the fact that McKinney bayou was long ago cut off from the Mississippi river by a levee, not only for the benefit of complainants, but for the entire delta, and the fact that the plans adopted by the defendants are the most feasible, and the cheapest and best, and for the further reason that, after hearing all of the evidence, personally viewing the situation, and having both sides ably presented by counsel, it appears to me that the defendants have an equitable and legal right to drain their lands as contemplated.

"This application for an injunction will therefore be denied, the complainants' bill is hereby dismissed, and complainants will be taxed with the costs of this suit. To which action of the court the complainants except, and, having prayed an appeal to the supreme court, the same is hereby allowed."

Taking the facts as found by the chancellor as being true for the purposes of this opinion, we are unable to agree with his conclusion. The right of the McKinney Lake drainage district, so far as White Oak bayou is concerned, is settled by the case of *Board of Drainage Commissioners of Drainage District No. 10 of Bolivar County et al. v. Board of Drainage Commissioners of Washington County et al.,* 130 Miss. 764, 95 S. 75, in which we decided that the landowners along the water course had a right to drain their lands so as to turn the water into the water course where it would naturally go, and the fact that the water so collected and discharged into the channel caused damage to the lower or servient landowners lying in the lower reaches of the stream that they were not entitled to enjoin such improvement or to collect damages done as a condition of permitting the

improvement. The case then recurs on the question as to whether or not Irish ditch may be widened and deepened so as to increase the flow of waters out of McKinney Lake, a natural water course, and discharge it into White Oak Bayou through which the waters of McKinney Lake originally did not go except in cases of unusual floods or overflows. If the channel of Irish ditch may be widened and deepened as contemplated, it will cause a large part of the waters of McKinney Lake to be diverted from that water course into White Oak bayou and Coldwater river and eventually into Yazoo river where the waters were not accustomed to flow in the past. The McKinney Lake is a stream which originally emptied into the Mississippi river without obstruction, and in its original state it was only flood waters when the stream had reached a great height that flowed out through Boggy bayou and eastwardly until it reached White Oak bayou and thence along that stream it reached the Coldwater river through several bayous and lakes. The waters of McKinney Lake were later taken care of at the levee by means, first, of the culvert, which not proving satisfactory a siphon was built, which also proved unsatisfactory, and a pumping station was established and the waters pumped across the levee, where they continued southwesterly to the Mississippi river.

It is contended by the appellees that the Irish ditch, by reason of the length of time which water has flowed through it from McKinney Lake, has become a natural water course with all the rights that would exist were it a water course by nature; which the appellants insists that the rights acquired in this ditch were only such rights as existed during the prescriptive period and that it is not permissible to deepen and widen this ditch so as to increase the waters flowing through it and increase the waters which the appellants have to care for in their drainage system. The question is an important one, and in view of its importance we have given it protracted consideration. After such consideration we have

reached the conclusion that the rights acquired through Irish ditch are limited by the conditions which existed during the prescriptive period and that the McKinney Lake drainage district has no right to widen and deepen the said ditch so as to divert the flow of water from Mc-Kinney Lake as it is accustomed to flow.

In *Harvey v. I. C. R. R. Co.*, 111 Miss. 835, 72 So. 273, it was held by the court that, although the railroad company acquired the right to discharge through an original culvert in its embankment which had existed forty or fifty years, this right did not carry with it an additional right to construct two or more culverts or to double the capacity of those already in use; the court laying down the doctrine that the right of adverse user in such cases was limited to the right enjoyed during the prescriptive period and that it could not get any greater right than existed during that period.

In *Sturges v. City of Meridian*, 95 Miss 35, 48 So. 620, the court held that, where a ditch had been dug for more than ten years, and continuously used from that time, by a city to carry off water falling upon a certain area of the city, the city obtained the right of prescription to maintain the ditch, but that right was limited by the character and extent of the right exercised during the period of prescription, and it could not be thereafter enlarged either by excavation or by increasing the flow of water. In other words, that the city only acquired by prescription the rights which it had exercised during the period of prescription.

In *Mississippi Mills v. Smith*, 69 Miss 299, 11 So. 26, 30 Am. St. Rep. 546, the court held that the rights secured by prescription are limited by the character and extent of that exercised during the period of prescription and that for any increase causing material injury an action can be brought.

We realize and recognize that an artificial channel may exist under such circumstances and for such length of time that it would be treated for riparian purposes as

though it were a natural channel or stream.  But we think that before it can be treated as a natural stream or water course within the meaning of law, so that it may be widened and deepened for drainage purposes, it must be a channel which takes care of the water naturally and normally flowing through the water course.  In other words, when the course of a stream is entirely changed by an artificial channel so that all of the water passing through the original channel passes through the artificial channel and continued under such conditions as would confer rights by prescription, then such artificial channel would be treated as though it were originally in that water channel.  But where only a part of the water of the natural water course is taken through an artificial channel, or diverted by an artificial channel, the rights acquired by prescription are limited by the character and condition of things existing through the prescriptive period.  It might be that an artificial channel would carry only a small part of the waters of a natural water course during the prescriptive time and the conditions in existence might not be objectionable, but, on the contrary, might be beneficial.  But after the prescriptive period had passed the channel and water cannot be materially increased to the detriment of other persons having rights in the stream.  It has never been the law, so far as we are advised, that water of a water course could be changed and diverted so as to entirely change the water course to the damage of other property owners without compensation for such damages, if it could be done at all.

We do not think the drainage laws authorize changes of the character here sought to be made, and the judgment of the court will be reversed and the injunction granted here restraining the deepening and widening of Irish ditch.

*Reversed and injunction granted here.*