BOARD OF LEVEE COM'RS FOR YAZOO-MISSISSIPPI DELTA *v.*
WITHERS *et al.*

(In Banc.   Feb. 9, 1942.)

[6 So. (2d) 115.   No. 34792.]

**Brewer & Sisson,** of Clarksdale, for appellant.

Dulaney & Bell, of Tunica, for appellee.

Argued orally by **Ed. C. Brewer,** for appellant, and by **J. W. Dulaney,** for appellee.

**Alexander, J.,** delivered the opinion of the court.

Eminent domain proceedings were instituted by appellant to condemn a parcel of land owned by appellees of approximately 4.9 acres constituting a portion of a pond of about 10 acres, the remainder of which was owned by appellant. The waters of such pond were retained by a dam erected as a sublevee by appellant upon its own land. This cause involves the right of owners of the land upon which water had been impounded by the dam erected by the Levee Board on its own property, to recover consequential damages to adjacent lands in addition to the actual value of the pond site when the latter is appropriated upon abandonment of the dam and release of the waters.

Approximately thirty years prior to the commencement of the action the Levee Board constructed on the land side of the main levee of the Mississippi River what is commonly known as a sublevee. The purpose of said sublevee was to create a body of water against or near the main levee on the side opposite the river so as to prevent, by means of a counter weight or pressure, the formation of sand boils, or the sloughing away of levee material due to pressure and seepage from the river. As

stated, the sublevee constituted a dam which impounded a lake or pond over an area of approximately 10 acres, 4.9 acres of which was owned by appellees. It is not clear under what terms the right to use appellees' lands for this purpose was acquired but it was at least with their consent. A 12-inch drain pipe or water gate with a control valve was installed in the sublevee for the purpose of draining the pond during seasons when the need of its maintenance temporarily ceased. However, except on one occasion, the valve was kept closed, resulting in its ultimate stoppage making it necessary to cut the sublevee to drain the water.

The pond thus created was used and valued chiefly for fishing and boating and there was testimony that it materially increased the value of the lands of the appellees as riparian owners and residents. There was, however, testimony to the contrary varying from statements denying value to that alleging a resultant benefit after drainage. Appellees simplify the discussion by eliminating as bases of contention any rights derivative from prescription or dedication.

Did the riparian owners have the legal right to demand permanent maintenance of the sublevee as a dam? The answer to this inquiry will conversely determine whether the Levee Board retained the right to abandon the dam. As stated, the dam was erected by the Levee Board upon its own property, and maintained solely by it. We find ample authority to support the contention that the first must be answered in the negative and the latter in the affirmative. Recovery in such case is to be adjudged not in terms of the value of a privilege but the existence of a right. The issue as to value may not be reached unless and until a precedent and supporting right is established. If no such right exists the loss is damnum absque injuria. It must be borne in mind that we are not dealing with a case where a pond constructed and maintained by A upon his own land is condemned by B. The damages here claimed include the value of the pond or its site, and the

incidental damage to adjacent lands. Both items were allowed by the jury and the decree of the court. The valuation of the pond as such is not contested, but appellant urges as error allowing a recovery for consequential damages resulting from the loss of the pond as such.

Since no prescriptive rights could be asserted against the Levee Board (Adams v. Illinois Central R. R. Co., 71 Miss. 752, 15 So. 640), the right of appellees must be referred to some other principle. Such attempt is made under authority of Pompey Lake Drainage Dist. v. McKinney Lake Drainage Dist., 136 Miss. 168, 99 So. 387, and Scranton-Pascagoula Realty Co. v. City of Pascagoula, 157 Miss. 498, 128 So. 73. But these cases involve pre-existing natural watercourses and the question decided was whether an artificial watercourse changing the character or course of the natural one could be abandoned after lapse of the prescriptive period. While conceding that such artificial channel could under certain circumstances be treated for riparian purposes as though it were the natural channel, this court [136 Miss. 168, 99 So. 390] added: "But we think that before it can be treated as a natural stream or watercourse within the meaning of law, so that it may be widened and deepened for drainage purposes, it must be a channel which takes care of the water naturally and normally flowing through the water course. In other words, when the course of a stream is entirely changed by an artificial channel so that all of the water passing through the original channel passes through the artificial channel and continued under such conditions as would confer rights by prescription, then such artificial channel would be treated as though it were originally in that water channel. It is clear that both these cases not only involve the substitution of an artificial for a natural pre-existing watercourse but base upon prescription or adverse user the right to identify the former with the latter as by giving to it the attributes of a natural channel. Such criticism is appropriate to the other cases cited by appellee.

We are not called upon to consider the right of one whose lands have been flooded by a dam belonging to an individual owner to compel its maintenance. (As to which see Drainage Dist., etc., v. City of Everett, 171 Wash. 471, 18 P. (2d) 53, and annotation thereto in 88 A. L. R. at page 130; 27 R. C. L. 1205; 67 C. J. 903, 926; Farnham Waters and Water Rights, pp. 2402, 2403). It is sufficient that the Levee Board retained the right, by abandoning its dam, to allow the impounded area to revert to its original state. There could be no doubt that the Levee Board could have removed its dam the day or week after it was built and since this right could not be abated or forfeited by prescription it had the right to do so in 1940. So it is seen that any improvements placed upon the adjoining lands during this period were made with presumed knowledge of the existence of such right and upon the hazard that the period of permissive enjoyment might not justify their erection. Since appellees had no prescriptive rights in the dam they are without right to demand its maintenance. It is but another way of expressing the same thing to state that they had no right to demand the use of it to retain the pond upon their land. The creation of the pond was for a special public purpose and it was subject to abandonment when at any time such public purpose was to be otherwise served. It is conceivable that if the creation of the pond as a safety measure in the public interest was found to be an impracticable engineering experiment, its abandonment may rise to the level of a public duty.

Appellees' incidental damage, if any, is to be measured by the existence and extent of some invaded right. The incidental damage to the riparian lands is claimed to be the loss of the added value derived from the existence of the pond as such. Since the existence of the pond in turn depended upon the maintenance of the dam and appellees had no right as against the Levee Board to compel its maintenance, the latter had the right to remove the sublevee even though as a necessary and unavoidable in-

cident to the exercise of this right, it caused drainage of the pond it had created. We are not confronted with a case where a permissive enjoyment is to be appraised with a view to the possibility of a future abandonment of that on which the enjoyment depends. Here, a present and final abandonment forestalls consideration of any future use.

The alleged depreciation of the value of adjacent lands thus results from the removal of that which was the source of their enhancement, the presence of the pond, and since appellees must be held to have made improvements in contemplation of a special and temporary use by appellant and of its right of abandonment, they may not complain that their enjoyment thereof for thirty years did not measure up to their expectations. The use of these waters for this extended period, instead of creating a right, is merely the measure of privileges permissively acquired and gratuitiously enjoyed. Estoppel is not asserted nor involved.

The verdict of the jury fixed the value of the 4.9 acres of land side pond at $245 and consequential damages to adjacent land at $2,500. The latter item resulting, if at all, from the abandonment or drainage of the pond as such should not have been assessed and it was error for the learned chancellor to submit that issue to the jury and to include same in the decree. No objection is made to the valuation of the pond acreage. Wherefore we are compelled to reverse the allowance of incidental damages and amend the decree so as to allow the appraised value of the pond acreage alone, in the sum of $245.

Reversed and rendered.