GINTHER, et al. *v.* LONG

No. 40174 May 7, 1956 87 So. 2d 286

886

*Welch, Gibbes & Graves, Dorothy B. Clower,* Laurel, for appellants.

888

*Jeff Collins, Ronald C. Brown*, Laurel, for appellee.

HOLMES, J.

The appellee sued the appellants for damages to his land and the timber thereon resulting from the alleged wrongful act of the appellants in willfully causing or permitting deleterious effluents, consisting of salt water and oil, to flow upon said land from a producing oil well of the appellants located on adjacent land.

The appellee sought the recovery of claimed damages to his land, the actual value of trees thereon alleged to have been destroyed, and the statutory penalty prescribed in Section 1075 of the Mississippi Code of 1942, as amended, for the willful or reckless cutting or destruction of the trees of another without the owner's consent.

The court instructed the jury to find for the appellee on the issue of liability and under instructions here complained of by the appellants the case was submitted to the jury on the issue of damages. The jury returned a verdict for the appellee for $3800 as damages to his land and $700 as statutory penalty. Judgment was entered accordingly, and from this judgment the appellants appeal.

The appellee owned 63 acres of land in Jones County. The north 23 acres thereof were in cultivation and had two tenant houses thereon. The south 40 acres thereof were pasture land, through approximately the center of which ran Sholar Mill Creek. The appellants had a producing oil well on the land lying immediately south of and adjoining the said 40 acres. The appellants had two disposal pits constructed in connection with the operation of the well, and later, on complaint of conditions by the appellee, constructed a third. These pits were provided to receive the deleterious effluents, consisting of salt water and oil, from the well. It was claimed by the appellee that the appellants willfully and knowingly caused or permitted the seepage and overflow of the deleterious effluents to flow from the pits into a drain and thence into the aforesaid creek and upon the land of the appellee, polluting the same and causing damage to the land and the destruction of trees and vegetation thereon.

Appellants do not argue that the trial court was in error in granting to the appellee a peremptory instruction on the issue of liability. Their complaints, as argued in their brief, are that the verdict of the jury is ex-

cessive, that the instructions granted to the appellee did not prescribe the proper measure of damages, that the court erred in refusing to instruct the jury that there could be no recovery for the statutory penalty, and that the court erred in refusing to permit the appellants to introduce in evidence a certificate of compliance issued to the appellants by the Game and Fish Commission, purporting to show compliance by the appellants with the rules and regulations of the Game and Fish Commission regulating pollution.

■■ ■ We think the court committed no error in sustaining the objection of the appellee to the introduction of the certificate of compliance. In Section 5929-07 of the Code of 1942, it is provided, among other things, the following:

"If such investigations shall disclose that the treatment works is operating in accordance with the terms and specifications of its permit, the commission shall issue to such works a certificate of compliance, which certificate shall be conclusive evidence for all purposes that the effluent discharged by said treatment works into the waters of the state does not result in pollution that will tend to destroy fish or other aquatic life or wild or domestic animals or fowls or to be injurious to the public health or against the public welfare."

The certificate in question was offered in evidence as conclusive proof that the pollution complained of by the appellee did not exist. According to the testimony of the appellee, he was on the land in question in April, 1954 and saw no evidence of damage to trees and vegetation or otherwise resulting from pollution. On July 4, 1954, he was informed by a neighbor that the trees and vegetation appeared to be dead and dying. On July 8, 1954, he went to the property and discovered the dead and dying trees and vegetation and the existence of effluents on the land consisting of salt and oil deposits. Thus, in April, 1954, he saw no evidence of the damage. On July 8, 1954, he found the conditions as stated. On

that date no certificate of compliance had been issued by the Game and Fish Commission. It was not issued until September 15, 1954, at which time it was undertaken to make the certificate retroactive to January 1, 1951, it being certified by the director that the issuance of a certificate on January 1, 1951 had been overlooked. We are of the opinion that the Commission could not make an ex parte retroactive finding of non-pollution which would bar private parties in an action for damages shown to have occurred prior to the issuance of any certificate.

Assuming that the certificate had been issued on January 1, 1951, it did not constitute a perpetual license to the appellants to discharge its deleterious effluents upon the land of the appellee and thereby cause damage. Masonite Corp. v. Guy, 77 So. 2d 720. To hold otherwise would be to grant to the State Game and Fish Commission the right to make an ex parte retroactive finding as to pollution or non-pollution, which retroactive finding would be conclusive upon private parties in an action for damages such as this. We think there was no error in the action of the trial court in sustaining the objection to the introduction in evidence of the certificate.

The other complaints of the appellants are so related that we discuss them together.

The appellee himself testified that the north 23 acres of his land were not involved in this law suit, and that he was not contending that anything happened to this north 23 acres. He further testified that only 8 or 10 acres were included in the "area covered by salt, and the area where the dead trees were." One of his witnesses testified that only 8 or 10 acres of the land were polluted. Notwithstanding this admission by the appellee, the court instructed the jury that in arriving at the amount of damages to be awarded, they might consider the before and after value of the entire tract

of 63 acres. This was error. ██ ██ In the case of Gulf Refining Company v. Davis, 80 So. 2d 467, we held that the damages must be confined to the area affected. In the case of Southland Co. v. Aaron, 221 Miss. 59, 72 So. 2d 161, we approved the general rule as to the measure of damages with respect to permanent damage and damage of a temporary character as set forth in 56 Am. Jur., page 841, Waters, par. 422, as follows:

"It is the general rule that where the injury caused by the pollution is permanent and irreparable, the measure of damages is the difference in the market value of the property before and after the creation of the nuisance. But if the injury resulting from the pollution is of a temporary character, or if the nuisance is a temporary or abatable one, the measure of damages is the depreciation in the rental value of the property caused by the nuisance."

Further dealing with the rule with respect to damage of a temporary character, the Court, in the case of Mississippi Mills v. Smith, 69 Miss. 299, 11 So. 26, said:

"The court should not have permitted the plaintiffs to prove the difference in the value of their farm with a clear stream on it and with that polluted as it was. The injury is not of a permanent character, and will not, in the course of nature, continue after its cause shall be removed. It must be assumed that the defendant will cease to infringe upon the rights of the plaintiffs, and, if it does not, recovery must be had in successive suits."

Under the appellee's own admission, the north 23 acres of his land were not involved; only 8 or 10 acres of his remaining 40 acres were affected; the damage, if any, to the remaining 30 acres by reason of the polluted creek running through it was of a temporary nature and the measure of damages as to this was the difference in rental value before and after pollution. The instructions did not conform to these rules as to the

measure of damages, and were, therefore, erroneous and necessitate a reversal of the judgment below.

 ██ We think the trial court was further in error in instructing the jury that they might award the statutory penalty for the trees as set forth in Section 1075 of the Mississippi Code of 1942, as amended. We have heretofore held that the statute authorizing the statutory penalty is highly penal and must be strictly construed. Murphy v. Seward, 145 Miss. 713, 110 So. 790.

 ██ It is our opinion that the legislature never intended by the enactment of this statute to base a recovery of the statutory penalty on a mere non-feasance or omission to discharge a duty owing to another. The statute itself indicates that it was intended only to apply to the wrongful cutting of trees, or to some affirmative act on the part of the wrongdoer in cutting or destroying the trees. We are of the opinion that the statutory penalty is not recoverable in an action such as is before us, and that the trial court was in error in instructing the jury to the contrary. We do not mean to hold, however, that exemplary damages may not be recovered in an action to recover damages for the grossly negligent or reckless destruction of trees where the proof is sufficient to warrant such recovery.

It is our conclusion that for the errors hereinbefore discussed, the judgment of the court below must be and it is reversed and the cause remanded for trial on the issue of damages only.

Reversed and remanded for trial on issue of damages only.

*McGehee, C.J.,* and *Hall, Lee* and *Kyle, JJ.,* concur.