205 So.2d 274 (1967)
LOVE PETROLEUM COMPANY, Inc.
v.
Mrs. R.L. JONES and Daughter and Son-In-Law, Mr. and Mrs. Wilson Waller.
No. 44671.
Supreme Court of Mississippi.
December 18, 1967.
Jerry T. Johnston, Jr., Brandon, for appellant.
Walker & Sullivan, Laurel, for appellees.
RODGERS, Justice:
Mrs. R.L. Jones and Mr. and Mrs. Wilson Waller, appellees, filed suit in the Circuit Court of Wayne County, Mississippi, against Love Petroleum Company for damages to their real estate caused by escaping oil and salt water from appellant's oil well. Appellees obtained a jury verdict and judgment against the appellant for the sum of $2,500.
Appellant contends on appeal to this Court that the evidence is insufficient to warrant a verdict in favor of appellees; that the verdict of the jury is excessive; that the jury did not obey the instructions of the trial court; and that the motion of appellant for judgment notwithstanding the verdict was erroneously overruled.
The testimony introduced by the appellees shows that oil and salt water escaped from appellant's well, Wimberly-Ridgeway No. 1, sometime in the early part of 1966 and "ran downgrade into Dry Creek." This creek crossed the appellees' 900 acre farm. Trees along the creek died. The trunks of the *275 trees along the banks of "Dry Creek" were covered with oil several feet up to the high water mark. Appellees used the adjacent land to pasture 200 cows; but after salt water and oil entered the creek, the cows would not drink the water.
The testimony shows that, beginning near or at the oil well and for some distance down Dry Creek, trees were dead. Pictures were introduced which showed the dead timber along the creek. Appellees' testimony showed that there were 302 dead trees along Dry Creek on the land of appellees and that the value of these trees was now $190. The testimony further shows that before the oil and salt water were permitted to drain into appellees' land the reasonable rental value of the farm was $2,600 per year, but after the salt and oil entered the creek the reasonable rental value of the farm was $1,300 per year, a loss of $1,300. The testimony also revealed that all fish were gone from the creek and that, prior to the pollution, the appellees had successfully used the creek as a fishing place.
The appellant offered evidence to show that appellant had installed a "separator," sometimes called a "heater-treater," to separate the oil from the salt water because "it started making water." This task was accomplished September 25, 1963, and since that time, it is said, "all water that the well produced has been returned back into the formation." On cross-examination, however, it developed that on occasions the well quit taking the salt water and it was necessary to treat the formation with acid to get the flow of salt water back into the well. Appellant also offered evidence to show that there were not many dead trees along "Dry Creek" on the land of appellees. One of appellant's witnesses, however, admitted that a large pit near the well contained salt water and stated, "Well, there is a little seepage going down the hill there, but it had come a big fresh rain just before we got there, see."
We have reached the conclusion from the foregoing testimony that the facts developed in this case presented a typical jury issue. The jury decided in favor of the appellees, and we agree that the preponderance of the evidence warranted a jury verdict against the appellant as to liability.
The appellant contends that the appellees did not show any testimony as a basis on which to warrant a verdict against the appellant for $2,500. We do not agree with this contention, because to permit salt water and oil to escape upon the lands of another creates a nuisance for which a landowner is entitled to at least nominal damages; and if the nuisance creates a temporary injury to the property, the landowner is entitled to the difference between the rental value of the property before the nuisance and the rental value of the land after the creation of the nuisance. The landowner is also entitled to such other special damages as may accrue to him as a direct result of the nuisance. Mississippi Mills Co. v. Smith, 69 Miss. 299, 11 So. 26 (1892); Southland Co. v. Aaron, 221 Miss. 59, 72 So.2d 161, 49 A.L.R.2d 243 (1954); Southland Co. v. Aaron, 224 Miss. 780, 80 So.2d 823 (1955); Southland Co. v. McDonald, 225 Miss. 19, 82 So.2d 448 (1955); City of Oxford v. Spears, 228 Miss. 433, 87 So.2d 914 (1956); 56 Am.Jur. Waters § 422 (1947); 66 C.J.S. Nuisance § 175 (1950); Magnolia Petroleum Co. v. Stinson, 230 Miss. 533, 93 So.2d 815 (1957); Ginther v. Long, 227 Miss. 885, 87 So.2d 286 (1956).
The method of determining the damages due to the landowner because of the depreciation in rental value is an equitable method, because it is in fact a method to establish the amount due by the trespasser for the wrongful use of the adjoining land for his purpose. Moreover, it is not only a correct measure of damages, but experience has taught us that it is the best method of determining damages for temporary nuisance. See the authorities cited in Sussex Land & Livestock Company v. Midwest Refining Company, 294 F. 597, 34 A.L.R. 249 (8th Cir.1923); Annotation, 19 A.L.R.2d *276 1025, §§ 5, 6 (1951); 1 Williams and Meyers' Oil and Gas Law § 217, at 178 (1964).
We are of the opinion that the testimony is ample to sustain a verdict for the amount of damages found by the jury to be due the landowner. The judgment of the trial court will therefore be affirmed.
Affirmed.
GILLESPIE, P.J., and PATTERSON, SMITH and ROBERTSON, JJ., concur.