912 So.2d 483 (2005)
Honer Troy DELANCEY and Irene R. Delancey, Appellants
v.
Conrad M. MALLETTE, Appellee.
No. 2003-CA-00357-COA.
Court of Appeals of Mississippi.
June 28, 2005.
Rehearing Denied October 11, 2005.
*485 Billy Parlin, attorney for appellants.
G. Charles Bordis, attorney for appellee.
Before BRIDGES, P.J., CHANDLER and ISHEE, JJ.
CHANDLER, J., for the Court.
¶ 1. Conrad Mallette owns a forty acre tract of land adjacent to property held by Troy and Irene Delancey. He uses this land for farming purposes, making it necessary for heavy equipment to enter his land. Troy and Irene's land is located at the end of a public road. Mallette's property can be accessed by way of a fourteen foot opening. In order to get to the fourteen foot opening, it is necessary to cross an area of Mallette's property that is located in a wetland area.
¶ 2. Mallette's property can also be accessed through a strip of land on Troy and *486 Irene's property. For more than forty years, Mallette has been using a strip of land on Troy and Irene's property. Troy and Irene knew of Mallette's use of their property, and they testified that Mallette had used the strip of land as if it were his own. The Delanceys allowed Mallette to use their property until Irene's husband died. In the year 2001, Troy constructed a gate in an effort to prevent Mallette from using the property. Mallette filed a complaint seeking an injunction against the obstruction of his access to the land and also seeking an easement. The Delanceys counterclaimed and claimed that Mallette's use of his property directly behind their home constituted a nuisance.
¶ 3. The Jackson County Chancery Court granted an implied easement to Mallette, finding that the strip of land on Troy and Irene's property was the only practical means through which heavy equipment could enter Mallette's land, and also finding that the use of Troy and Irene's land was necessary in order for Mallette to continue his farming operations. Troy and Irene appeal, raising the following issues:
I. WHETHER THE CHANCELLOR ERRED IN GRANTING MALLETTE AN EASEMENT
II. WHETHER THE CHANCELLOR ERRED IN GRANTING RELIEF NOT SOUGHT IN THE PLEADINGS
III. WHETHER THE CHANCELLOR ABUSED HER DISCRETION IN FAILING TO RULE THAT THE MOVING OF A FENCE WHICH ALLOWED CATTLE WITHIN EIGHTEEN INCHES FROM THE DELANCEY HOUSE CREATED A NUISANCE
¶ 4. Finding that Mallette failed to prove all the elements necessary to establish that he was entitled to an implied easement, we reverse and render the chancellor's grant of an implied easement. However, we find that the chancellor prematurely denied Mallette's claim for a prescriptive easement, and we reverse and remand on this issue. We affirm as to issues two and three.

FACTS
¶ 5. Irene Delancey and Conrad Mallette have been neighbors for more than forty years. Mallette owns a forty acre tract immediately north of the real estate owned by the Delanceys. Mallette took title to this land in 1956 and has been the fee simple owner of that tract since that time. Irene has been at her residence since 1951 and took title to her land in 1972. Troy is Irene's son and obtained an interest in Irene's property in 2000 after Tom Delancey, Irene's husband and Troy's father, died. At that time, Irene deeded her land to Troy, subject to a life estate held by Irene.
¶ 6. Troy and Irene's real estate is adjacent to Delancey Road, which is maintained by Jackson County, Mississippi. Delancey Road comes to a dead end at Troy and Irene's property, which stands between the end of Delancey Road and Mallette's property.
¶ 7. Mallette uses his tract of land for the purposes of farming cattle, growing crops, and growing timber. His farming operations necessitate the use of heavy equipment in order to maintain his property as a field and pasture. Mallette traversed a strip of land on Troy and Irene's property that is approximately twenty-five feet wide and two hundred fifty feet long in order to access Delancey Road. He has used this strip of land continuously since 1957. Since 1972, Mallette has used George County Co-Op Supply to plant, fertilize, and treat Mallette's land. The *487 trucks used by George County Co-Op Supply weigh 14,000 pounds without any load. They have used Troy and Irene's land for ingress and egress continuously since 1972 and have never sought permission from the Delanceys to access this land.
¶ 8. Mallette owns another parcel of real estate to the northeast of his forty acre parcel. The two parcels are catty-cornered to one another and share a common boundary. The only access from one parcel to the other is a fourteen foot opening. In order to get to the fourteen foot opening, it is necessary to cross an area of Mallette's property that is located in a wetland area. Mallette introduced into evidence a letter from Walter E. Walker, County Agent for Jackson County. He stated that the opening is inaccessible when the weather is adverse. His letter stated that "cattle production, row-crop farming, winter forest production and other related operations that are successful to one's farm/land requires year round access to areas where cattle or crops are being produced. This road will not provide that access during times when access is needed most." A representative from George County Co-Op testified that his agency would not traverse the wetland area with heavy equipment.
¶ 9. Mallette owns a third parcel of real estate located to the south and west of Troy and Irene's property, which the chancellor considered as a second alternative access to Mallette's forty acre tract. Access from this parcel to his forty acre tract is by way of a four foot passageway owned by Mary Delancey.[1] Mary Delancey has verbally agreed to allow Mallette to use this four foot strip of land, which Mallette uses to allow his cattle to cross from one feeding area to another. This strip of land allows Mallette to transfer one cow at a time between his respective properties. The chancellor viewed this second alternative access, which is between two fence lines. She held that the four foot passageway was too narrow for heavy equipment to traverse.
¶ 10. The Delanceys have seen Mallette make use of their strip of land. Irene testified that Mallette has used her strip of land for as long as she has been neighbors with Mallette. Troy, who was thirty eight years old at the time of the trial, testified that Mallette has been using the strip of land for as long as he can remember. Irene never tried to stop Mallette from using the land because her husband allowed Mallette to make use of the land. Troy never tried to stop Mallette from using the land because he had no ownership interest in the land until the year 2000.
¶ 11. In 2001, Troy constructed a gate to prevent Mallette from using the strip of land needed to gain access to his property. Mallette sought an injunction against this obstruction and also sought an easement. Irene and Troy filed a counterclaim, alleging that the cattle on Mallette's property caused a nuisance, or alternatively, that they were entitled to part of Mallette's land by adverse possession. The chancery court granted Mallette an implied easement over the strip of land on Troy and Irene's property, enjoined Irene and Troy from obstructing Mallette's use of the parcel, dismissed Troy and Irene's claim of nuisance, dismissed Troy and Irene's claim for adverse possession, and enjoined the parties from harassing one another.

ANALYSIS

I. WHETHER THE CHANCELLOR ERRED IN GRANTING AN EASEMENT TO MALLETTE
¶ 12. Under Mississippi law, an easement may be created by grant, implication, *488 or prescription. Gulf Park Water Co., Inc. v. First Ocean Springs Dev. Co., 530 So.2d 1325, 1331 (Miss.1988) (citing Mississippi State Highway Comm'n v. Wood, 487 So.2d 798, 804 (Miss.1986); Logan v. McGee, 320 So.2d 792 (Miss.1975)). In the present case, the chancellor granted Mallette an easement by implication.

(A) Whether the chancellor erred in granting an implied easement to Mallette
¶ 13. The terms "easement by necessity" and "easement by implication" are interchangeable. Swan v. Hill, 855 So.2d 459, 463 (¶ 17) (Miss.Ct.App.2003) (citing Broadhead v. Terpening, 611 So.2d 949, 952-53 (Miss.1992)). "The burden of proof is on the claimant seeking an easement by necessity; the party must establish that he is implicitly entitled to the right of way across another's land." Leaf River Forest Products v. Rowell, 819 So.2d 1281, 1284 (¶ 11) (Miss.Ct.App.2002).
¶ 14. An implied easement must be continuous, apparent, permanent, and necessary. Hutcheson v. Sumrall, 220 Miss. 834, 840, 72 So.2d 225, 227 (1954). The chancellor considered and applied each of these factors when she awarded an implied easement to Mallette. However, as an initial first step, the plaintiff must show that the tract that is blocked in its access to a public road was once joined with the tract over which access is allegedly necessary. See Dieck v. Landry, 796 So.2d 1004, 1008 (¶ 13) (Miss.2001). In the case sub judice, Mallette has made no showing that his property was ever part of a common tract with Troy and Irene's property. The facts of this case show that Tom Delancey took possession of the land in 1951. The property was titled in Tom's mother's name at the time, and it had been titled in her name for many years prior to 1951. Mallette took title to his property in 1956. He did not take title from anyone in the Delancey family. Because Mallette has not shown that his property and Troy and Irene's property were ever under common ownership, we reverse and render the chancellor's ruling as to this issue.

(B) Whether the chancellor erred in denying a prescriptive easement to Mallette
¶ 15. An easement by prescription is shown by use which is (1) open, notorious, and visible; (2) hostile; (3) under a claim of ownership; (4) exclusive; (5) peaceful; and (6) continuous and uninterrupted for a period of ten years. Rawls v. Blakeney, 831 So.2d 1205, 1207 (¶ 8) (Miss.Ct.App. 2002). In the present case, the chancellor denied Mallette's request for a prescriptive easement because "Conrad does not claim ownership of the strip of land used for ingress and egress to his 40 acre field."
¶ 16. In Rawls, the plaintiffs established that they had a claim of ownership when they testified that they used the easement as the only safe and reasonable means for access to their property; they maintained the easement by adding gravel and keeping the ditches clean; they used personal funds to maintain the road; and guests of the plaintiffs used the land to access their property. Id. at 1209-10 (¶ 15). In addition, one of the plaintiffs stated to a defendant that he already had an easement. Id. The plaintiffs in Rawls did not establish their claim of ownership in claiming to own the actual strip of land over which the easement ran. Thus, the "claim of ownership" element in an action for prescriptive easement is not a claim to take title to a strip of land over which an easement runs, but rather it is a claim to own the easement itself. In the present case, Mallette may have established his claim of ownership through testimony that *489 he used the land as his own and through testimony that he allowed George County Co-Op Supply to access the easement without seeking the permission of anyone.
¶ 17. Troy and Irene claim that Mallette did not establish that his use of the easement was hostile because Tom Delancey verbally agreed to allow Mallette to use the easement. However, this Court finds that the evidence is sufficient to establish that Mallette's use of the easement was hostile. Troy and Irene both testified that Mallette has been using the easement for as long as they can remember. When "a use of the lands of another for roadway purposes has been open, visible, continuous and unmolested since some point in time anterior to the aged inhabitants of the community, such use will be presumed to have originated adversely." McCain v. Turnage, 238 Miss. 44, 46, 117 So.2d 454, 455 (1960). "Requiring a litigant who is attempting to establish adverse possession or a prescriptive easement to prove that there was no permission for use would be unreasonable. The law typically frowns upon requiring a party to prove a negative." Morris v. W.R. Fairchild Const. Co., 792 So.2d 282, 284 (¶ 9) (Miss.Ct.App. 2001).
¶ 18. In the present case, Mallette had been using the easement since 1957, long before Tom Delancey could have given Mallette permission to use the land. A prescriptive easement will vest when the person claiming the easement has enjoyed continuous and uninterrupted use of the land for a period of ten years. Thus, Mallette may have acquired his prescriptive easement as early as 1967, before Tom Delancey had the authority to give permission for Mallette to use his land.
¶ 19. Mallette may have proven all the elements necessary to establish a claim for a prescriptive easement. We remand this issue to allow the chancellor to make this determination.

II. WHETHER THE CHANCELLOR ERRED IN GRANTING RELIEF NOT SOUGHT IN THE PLEADINGS
¶ 20. In his complaint, Mallette states that he should be granted an easement because he has made open, visible, notorious, adverse, hostile, and uninterrupted use of the strip of land on Troy and Irene's property. These allegations recite the requirements of a prescriptive easement. See Rawls, 831 So.2d at 1207 (¶ 8). The chancellor granted Mallette an implied easement, which requires Mallette to prove that his access to the land is necessary. Troy and Irene argue that the chancellor's grant of an implied easement was in error because his request for an implied easement was not part of Mallette's complaint. Troy and Irene claim that they were not given an opportunity to defend.
¶ 21. Rule 8(a) of the Mississippi Rules of Civil Procedure provides:
Claims for Relief. A pleading which sets forth a claim for relief, whether an original claim, counter-claim, cross-claim, or third-party claim, shall contain:
(1) a short and plain statement of the claim showing that the pleader is entitled to relief, and,
(2) a demand for judgment for the relief to which he deems himself entitled. Relief in the alternative or of several different types may be demanded.
As stated in the Official Comment to Rule 8, the purpose of filing a complaint is to give notice to the defendant, not to state facts and narrow the issues.
¶ 22. A chancellor may grant any relief "which the original bill justifies and which is established by the main facts of the case, so long as the relief granted `will *490 not cause surprise or prejudice to the defendant.'" Crowe v. Crowe, 641 So.2d 1100, 1104 (Miss.1994). In the present case, in his complaint Mallette asked for an easement but did not limit his request for relief to a prescriptive easement. The phrase "prescriptive easement" is not found anywhere in Mallette's complaint, and Mallette's complaint also recites requirements for an implied easement. Mallette's complaint sets forth the fact that he has used the strip of land on Troy and Irene's property for many years and that his use of the property was known to all members of the Delancey family. The complaint further sets forth the fact that the use of land is essential to Mallette's farming business.
¶ 23. The record clearly shows that Troy and Irene were prepared to defend against a claim for a prescriptive easement as well as a claim for an implied easement. At the close of Mallette's case in chief, the attorney for Troy and Irene requested a dismissal. In arguing for a dismissal, Troy and Irene's counsel specifically mentioned that Mallette had not proven all the elements for an implied easement. Troy and Irene were clearly prepared to defend against the grant of all types of easements. This issue is without merit.

III. WHETHER THE CHANCELLOR ERRED IN FAILING TO HOLD THAT THE MOVING OF A FENCE WHICH ALLOWED CATTLE WITHIN EIGHTEEN INCHES FROM THE DELANCEY HOUSE CREATED A NUISANCE
¶ 24. After Tom Delancey's death, Mallette constructed a fence which allows cattle to roam within eighteen inches of Troy and Irene's home. Irene and Troy assert a claim by adverse possession to a thirty foot strip of land, which contains the eighteen inches of land behind Troy and Irene's home. The strip of land came into being when Tom approached Mallette and requested that Mallette set his fence back in order to allow the Delanceys' cows to be moved and rotated. Mallette agreed to accommodate Tom's request. At Troy's request, Mallette reset his fence to the Mallette-Delancey property line when Troy and Irene set up a cemetery on their parcel of land. Troy and Irene's adverse possession claim fails because Troy admitted at trial that he is not claiming any ownership interest in Mallette's thirty foot strip of land. See e.g. Berry v. Houston, 195 So.2d 515, 518 (Miss.1967) (for a claim of adverse possession, a plaintiff must prove, among other things, claim of ownership).
¶ 25. In the alternative, Troy and Irene claim that the presence of Mallette's cattle near their home is a private nuisance because the odor from the cattle is overbearing. A private nuisance can be shown by conduct causing an invasion of another's interest in the private use and enjoyment of land that is either (1) intentional and unreasonable or (2) unintentional and otherwise actionable under the rules controlling liability for negligent or reckless conduct; or (3) unintentional and actionable for abnormally dangerous conditions or activities. Leaf River Forest Products, Inc. v. Ferguson, 662 So.2d 648, 662 (Miss.1995). The presence of cattle on Mallette's property does not constitute negligent or reckless conduct, nor does it create an abnormally dangerous condition. Therefore, the chancellor could grant the nuisance claim only if the presence of cattle was found to be unreasonable. The chancellor dismissed Troy and Irene's nuisance claim because the cattle are not being fed in the area near their house, and because the strip of land near Troy and Irene's property was a small part of a much larger field upon which Mallette's *491 cattle graze or feed. In addition, the evidence shows that the Delanceys operated a cattle farming business before Tom's death, and the cattle owned by Tom were allowed to graze in the very same area that Troy and Irene now complain creates a nuisance. This Court does not disturb a chancellor's findings of fact unless the findings are manifestly in error. Nichols v. Tedder, 547 So.2d 766, 781 (Miss.1989). The chancellor was within her discretion in holding that Mallette's cattle did not create a nuisance for Troy and Irene.
¶ 26. THE JUDGMENT OF THE CHANCERY COURT OF JACKSON COUNTY IS AFFIRMED IN PART, REVERSED AND RENDERED IN PART, AND REVERSED AND REMANDED IN PART FOR PROCEEDINGS CONSISTENT WITH THIS OPINION. COSTS OF THIS APPEAL ARE ASSESSED EQUALLY BETWEEN THE APPELLANTS AND THE APPELLEE.
KING, C.J., BRIDGES AND LEE, P.JJ., IRVING, MYERS, GRIFFIS, BARNES AND ISHEE, JJ., CONCUR.
NOTES
[1] Mary Delancey is not a party to this lawsuit.