972 So.2d 38 (2008)
Paul FRATESI, Appellant
v.
CITY OF INDIANOLA, Mississippi, A Municipal Corporation, Appellee.
No. 2006-CA-01977-COA.
Court of Appeals of Mississippi.
January 8, 2008.
Nathan P. Adams, Greenville, for appellant.
George Ellis Abdo, Jackson, for appellee.
Before MYERS, P.J., GRIFFIS and CARLTON, JJ.
CARLTON, J., for the Court.
¶ 1. In this inverse condemnation case, we find ourselves at the intersection of a municipality's right to use and maintain its prescriptive easement and its obligation to pay just compensation for property taken or damaged for a public use.

FACTS
¶ 2. Paul Fratesi owns 120 acres of land abutting the western side of Faisonia Avenue in Indianola, Mississippi; he owns title to the centerline of Faisonia Avenue. The subject land has been in Fratesi's family for over seventy years and owned by Fratesi himself for about thirty years. Faisonia Avenue and the ditches running alongside it have been in existence for over fifty years. In August or September 2004, the City of Indianola (City), without the knowledge or consent of Fratesi, began a project to improve the drainage ditches on both sides of Faisonia Avenue. At the time the City began the project, the subject property was being leased to Gary Fratesi, the Appellant's son, for farming.[1] On the day the project began, Gary went to the worksite and requested that the excavated dirt be deposited on the subject land. Gary planned to use the excess dirt to improve *41 an existing "pad" on the land.[2] Later that day, Fratesi went to the work site and advised the workers that the project must stop. After some heated discussion, the City ceased work on the project. As a result of the work already performed by the City, the ditch had been widened a few feet.[3]
¶ 3. Unhappy with the City's actions, Fratesi filed suit in the Chancery Court of Sunflower County alleging (1) that the City trespassed on his property by commencing the project without his permission, (2) that the project widened the ditch and thus constituted a taking of his property for which he was entitled to just compensation, and (3) that Fratesi was entitled to injunctive relief.
¶ 4. A bench trial was conducted at which Fratesi testified. He stated that Faisonia Avenue and the ditches running alongside it had been in existence as long as he could remember. He stated that the City reconstructed a portion of Faisonia Avenue to straighten a sharp curve in about 1970 and that the City maintained the road's gravel surface until about 1998 when Faisonia Avenue was blacktopped by the City. Fratesi stated that prior to the taking, water pooled on a three acre portion of his property. He claimed that, as result of the drainage project, more water now pools on this portion of his land. Also, despite his testimony that he had, for several years, ceased to access his property from Faisonia Avenue, Fratesi claimed that the project resulted in a loss of access to Faisonia Avenue, for which Fratesi claimed he was entitled to damages.
¶ 5. At the conclusion of the evidence, the trial court held in favor of the City. The court found that the City had a prescriptive easement over Faisonia Avenue and the drainage ditch. The court found that the ditch was, in fact, widened and that Fratesi will no longer be able to access Faisonia Avenue. The court found the evidence insufficient to support Fratesi's allegation that more water was standing on his property as a result of the project. Because the City had ceased its work, the court found Fratesi's request for an injunction moot. As to Fratesi's request that the ditch be returned to its original condition, the court found it impracticable or impossible. The court ultimately denied all of Fratesi's claims, finding the evidence insufficient to prove damages.
¶ 6. Fratesi appeals and argues (1) that the trial court erred in not granting a permanent injunction, (2) that the City failed to prove its prescriptive easement as to the width of the ditches, (3) that the trial court erred in not awarding damages for the taking of his property for public use, and (4) that the trial court erred in not awarding damages for mental distress.

DISCUSSION
¶ 7. On appeal, a chancellor's findings will not be reversed unless "he was manifestly wrong, clearly erroneous or an erroneous legal standard was applied." Madison County v. Hopkins, 857 So.2d 43, 47(11) (Miss.2003). However, questions of law are reviewed de novo. Id.
1. Permanent Injunction
¶ 8. Fratesi argues that the trial court erred in not granting a permanent *42 injunction restraining further construction and directing the City to restore the ditch to its original condition. Fratesi cites no authority to support this claim in either his principal brief or his reply brief. The failure to cite authority in support of assignments of error precludes this Court from considering the claim on appeal. Graves v. Maples, 950 So.2d 1017, 1022(18) (Miss.2007). Therefore, we do not consider this issue.
¶ 9. In the interest of explanation, we briefly note that Fratesi was not entitled to injunctive relief. As to his request that the City be restrained from further construction, the trial court correctly determined that the issue was moot as the City had already ceased work on the project. Regarding Fratesi's request for restoration, we note that a party seeking a permanent injunction "must show an imminent threat of irreparable harm for which there is no adequate remedy at law." Reynolds v. Amerada Hess Corp., 778 So.2d 759, 765(28) (Miss.2000) (emphasis added). Given the public purpose of the City's project, Fratesi would be entitled to just compensation, if and to the extent that the project constituted a taking. Therefore, Fratesi was not entitled to injunctive relief because he had an adequate remedy at law.
2. Prescriptive Easement
¶ 10. Fratesi argues that the City failed to prove that it had acquired a prescriptive easement over his property. We separate this issue into two sub-parts: (1) whether the City acquired prescriptive rights in Faisonia Avenue and the drainage ditch as it existed prior to the project, and (2) whether the City's prescriptive rights in the road and ditch permitted the widening of the ditch incident to the maintenance of the easement.
¶ 11. "It is well settled in this State, that a public road can be established by prescription." Joachim v. Villa Santini, Inc., 353 So.2d 767, 768 (Miss.1977) (citations omitted). To prove an easement by prescription, one must show that the use is (1) open, notorious, and visible, (2) hostile, (3) under claim of ownership, (4) exclusive, (5) peaceful, and (6) continuous and uninterrupted for ten years. Rogers v. Marlin, 754 So.2d 1267, 1272(12) (Miss. Ct.App.1999). The party seeking to establish a prescriptive easement must prove these elements by clear and convincing evidence. Thornhill v. Caroline Hunt Trust Estate, 594 So.2d 1150, 1152-53 (Miss.1992).
¶ 12. In the instant case, Fratesi himself testified that Faisonia Avenue and the ditches running alongside had been in existence as long as he could remember, that the public had used the road for decades, and that the City had maintained the road. Fratesi presented no evidence regarding permissive use, interruption, nor any other theory which would negate the City's claim of prescriptive easement. We find that the City proved a prescriptive easement in the land underlying Faisonia Avenue and the drainage ditch as it existed prior to the project.
¶ 13. At this point, we encounter the pivotal issue in this appeal: whether the City's right to use and maintain its easement encompassed the widening of the ditch. We note that this precise issue was not addressed by either of the parties or the trial court. The trial court correctly determined that "with a prescriptive easement, the public gets what users use." Based on this finding, the trial court then proceeded directly into a determination of damages based on eminent domain. In our opinion the trial court's findings failed to consider an easement holder's right to maintain its easement without causing an *43 undue burden on the servient owner's estate. For this reason, we find that a new trial is warranted for such a determination. In the following discussion, we briefly examine the law surrounding this issue in an effort to aid the trial court on remand.
¶ 14. Generally, the scope of a prescriptive easement is defined by the adverse use exercised during the period of prescription. West Point v. Womack, 178 Miss. 808, 815 174 So. 241, 242 (1937). However, the owner of a prescriptive easement is "`authorized to make any use of the servient estate that is reasonably necessary for the convenient enjoyment of the servitude for its intended purpose[,] . . .'" so long as such use does not "`cause unreasonable damage to the servient estate or interfere unreasonably with its enjoyment. . . .'" Bivens v. Mobley, 724 So.2d 458, 464(26) (Miss.Ct.App.1998) (quoting Restatement of the Law (Third) of Property (Servitudes) § 4.10 cmt. c.). Mississippi law recognizes that "`uses that are reasonably necessary for enjoyment of an easement change over time as technology changes and as use of the dominant and servient estates changes.'" Id. at 464(28) (quoting Restatement of Property § 4.10 cmt. c.). Our supreme court has held that the owner of a prescriptive easement has the burden to repair and maintain the easement and thus "has an implied secondary easement to enter the servient property to perform the necessary maintenance and repair." Fourth Davis Island Land Co. v. Parker, 469 So.2d 516, 523 (Miss. 1985).
¶ 15. In sum, we note that the scope of a prescriptive easement is not strictly limited to the adverse use exercised during the period of prescription. So long as the servient estate is not unreasonably interfered with or damaged, the easement holder is authorized to perform maintenance reasonably necessary to permit the continued use and enjoyment of the easement for its intended purpose.
¶ 16. The chancellor made no finding as to whether the City's maintenance was reasonably necessary and whether the servient estate was unreasonably interfered with or damaged. Therefore, we find it necessary to reverse and remand for a new trial, at which the issue may be addressed. In so finding, we recognize that the issue is a close one. We do not mean to suggest that the chancellor would be incorrect in finding that the City's actions in widening the ditch were permissible as incident to the reasonable maintenance of its easement. We seek only to erase any presumption compelling the conclusion that the City has misused or overused its easement solely because the ditch was widened beyond the dimensions existing prior to the project. In light of our decision to reverse and remand, we address Fratesi's remaining issues for the limited purpose of narrowing the issues to be addressed at the new trial.
3. Damages for Taking
¶ 17. Fratesi argues that the widening of the ditch constituted a taking for which he is entitled to damages. As stated above, the chancellor determined that the ditch had been widened and proceeded to determine damages on the theory of eminent domain. The chancellor concluded that Fratesi was entitled to no damages because he failed to prove that the project resulted in a loss of value to the remainder of his land. Although, the record is unclear as to exactly how much the ditch was widened, it was undisputed at trial that the ditch had been widened. However, the trial judge failed to acknowledge that a portion of Fratesi's land, albeit small, was taken by virtue of the ditch being widened. "Due compensation has two components: the value of the property taken and the *44 damage, if any, to the remainder." Miss. State Highway Comm'n v. Franklin County Timber Co., 488 So.2d 782, 785 (Miss. 1986).
¶ 18. Therefore, if, on remand, the chancellor finds that the City exceeded the scope of its easement by widening the ditch, Fratesi will at least be entitled to damages for the physical occupation of his property, even if the chancellor finds no damages to the remainder.
4. Damages for Mental Distress
¶ 19. Fratesi claims that the trial court erred in not awarding damages for mental distress caused by the actions of the City and its employees in connection with the project. Fratesi attempted to show outrageous conduct by alleging that he was cursed out by the City's workers when he approached them to ask that the project be stopped. The City argues that the City's conduct was neither extreme nor outrageous so as to give rise to damages for mental distress. Burroughs v. FFP Operating Partners, L.P., 28 F.3d 543 (5th Cir.1994). The City also claims that the chancellor correctly found that any mental distress caused was not a reasonably foreseeable result of the widening of the ditch.
¶ 20. In order to recover on a claim for mental distress, a plaintiff "must always prove that the emotional distress was a reasonably foreseeable result of the defendant's conduct." Morgan v. Greenwaldt, 786 So.2d 1037, 1044(23) (Miss.2001) (citing Adams v. U.S. Homecrafters, Inc., 744 So.2d 736, 742 (¶¶ 17-18) (Miss.1999)). In the instant case, the City's actions do not rise to the level of extreme or outrageous conduct. Furthermore, any emotional injuries suffered by Fratesi cannot be considered a reasonably foreseeable result of the City's actions in widening a ditch on his property. This issue is without merit.
¶ 21. THE JUDGMENT OF THE CHANCERY COURT OF SUNFLOWER COUNTY IS AFFIRMED IN PART AND REVERSED AND REMANDED IN PART FOR PROCEEDINGS CONSISTENT WITH THIS OPINION. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLEE.
KING, C.J., LEE AND MYERS, P.JJ., IRVING, CHANDLER, GRIFFIS, BARNES, ISHEE AND ROBERTS, JJ., CONCUR.
NOTES
[1] Gary Fratesi is on the City Board of Indianola, and was aware of the City's plans to improve the drainage ditches along Faisonia Avenue.
[2] A pad is a raised mass of dirt which functions as a dam of sorts. Fratesi stated that the pad was in place to improve irrigation by preventing water from draining off of his farmland and into the ditch.
[3] The record is unclear as to how much the ditch was widened. Testimony adduced that the ditch was widened anywhere from four feet to fifteen feet.