992 So.2d 1232 (2008)
William Marian THRELKELD, Randy Kem Whitten, Iva Nell Whitten, Edward L. Maynard, Mary Ruth Whitten and Sandra K. Farley, Appellants,
v.
Mitchell L. SISK, Grace Sisk, James Bruce Sisk, Sr. and Phyllis Sisk Goggans, Appellees.
No. 2007-CA-00944-COA.
Court of Appeals of Mississippi.
September 23, 2008.
*1235 B. Sean Akins, Ripley, attorney for appellants.
Thomas Melvin McElroy, Tupelo, attorney for appellees.
Before LEE, P.J., CHANDLER and GRIFFIS, JJ.
CHANDLER, J., for the Court.
¶ 1. A chancellor granted Mitchell L. Sisk, Grace Sisk, and James Bruce Sisk, Sr., (collectively, the Sisks) a prescriptive easement across a private, gravel road to access their landlocked farmland in the Chiwapa Creek bottom, located in Lee County, Mississippi. The chancellor also found that Mitchell and Grace had an easement by necessity across the gravel road. William Marian Threlkeld, Randy Kem Whitten, Edward L. Maynard, Mary Ruth Whitten, and Sandra Kay Farley (collectively, the Whittens), the owners of the gravel road, appeal from the chancellor's decision.
¶ 2. We find that the chancellor's findings of fact were not manifestly erroneous and that the chancellor properly applied the controlling law to the facts. Therefore, we affirm.

FACTS AND PROCEDURAL HISTORY
¶ 3. The gravel road at issue runs south from Lee County Road 530. The property of Randy Kem Whitten (Kem) is located on the east side of the gravel road; on the west side, extending south from Lee County Road 530, are the respective properties of Threlkeld, Farley, and Maynard. Abutting the Whitten and Maynard properties to the south is a 120-acre parcel of land which is traversed by the gravel road. A split in the gravel road occurs on the 120-acre parcel. At the split, one portion of the gravel road continues south to a fifty-seven-acre parcel of farmland owned by James Bruce Sisk, Sr. (Bruce). The other portion of the gravel road travels west along a ridge to the farmland of Mitchell and Grace. The Sisks' farmland, bounded on the south by the Chiwapa Creek, does not abut a public road, and it is landlocked.
¶ 4. In 1998, the Sisks, along with Phyllis Sisk Goggans (Phyllis), commenced the instant litigation asserting their right to use the gravel road to access their landlocked farmland. They filed a fourth amended complaint in 2004, claiming that they had an easement by prescription and that Mitchell and Grace had an easement by necessity across the gravel road. The Sisks also claimed that the gravel road was public; however, they abandoned this claim at the hearing. In their answer, the Whittens claimed that the Sisks were trespassers. They requested damages and a permanent injunction restricting the Sisks from using the gravel road.
¶ 5. At the hearing in March 2007, it was established that the gravel road, the Whittens' property, the 120-acre parcel, and the farmland owned by Mitchell and Grace were once parts of a single tract purchased by F.G. Thomas from the Bank of Holly Springs in 1936. In 1941, Thomas conveyed forty acres west of the gravel road to R.M. Priest. At the same time, Thomas also conveyed nine acres east of the gravel road to Donald Priest (Donald). After these conveyances, Thomas retained title to the 120-acre parcel and to the gravel road.
¶ 6. Following the death of R.M. Priest, his widow, Willie Priest, became the owner *1236 of the forty-acre tract as well as a twenty-seven-acre tract west of the 120-acre parcel. In 1965, Mitchell and his brother, Frank, bought the twenty-seven-acre tract and also an adjacent ten-acre tract from Willie Priest. Donald Priest handled the sale. Mitchell testified that at the time of the sale, Donald told him that the gravel road was a public road and that no one could prevent Mitchell and Frank from using it. However, Mitchell testified that he never believed the gravel road was public, but he thought that Thomas owned it.
¶ 7. In 1968, J.H. Washburn and others obtained title to land originally owned by Thomas, including the 120-acre parcel. Washburn testified that he did not believe he had obtained title to the gravel road, and he assumed the gravel road was a county road. In 1970, Mitchell and Frank bought two parcels of farmland from Washburn and others. This purchase included an easement across the 120-acre parcel to the two parcels of farmland.
¶ 8. Mitchell and Frank used their four parcels for farming beans.[1] Phyllis's husband, Otis David Goggans (David), also farmed with them, beginning in the early nineteen-seventies. Mitchell and his son, Paul, testified that beginning in 1965, Mitchell and Frank used the gravel road to transport farm equipment to their farmland. Paul testified that he began driving farm equipment down the gravel road in the late sixties. Paul testified that from that time until the time of the hearing, Mitchell, Frank, and Paul moved the following farm equipment down the gravel road:
1973 half-ton Chevrolet pickup truck
1967 half-ton Chevrolet pickup truck
1983 half-ton Chevrolet pickup truck
1966 Chevrolet C-60 bean truck
1977 GMC 6000 bean truck
1976 Chevrolet C-60 bean truck
1985 Ford F-250 truck with spray rig: twelve feet wide, folded
Eight-foot-wide trailer
John Deere 8630 tractor: twelve feet wide
John Deere 4630 tractor: twelve feet, six inches wide
International 1466 tractor: twelve feet, six inches wide
International 1486 tractor: twelve feet, six inches wide
930 Case tractor
John Deere 7700 combine: eleven feet, six inches wide
John Deere 1010 field cultivator: sixteen feet wide, folded
White Model 272 disk: eighteen feet wide, folded
Case disk: fifteen feet wide, folded
Thirty-foot Great Plain drill: fifteen feet, six inches wide, folded
John Deere 7100 planter: twenty-one feet wide
Twenty-foot-wide chisel plow
¶ 9. According to the testimony, Mitchell and Paul used the gravel road exclusively for access to their farmland until 1983 when Phyllis and David acquired an eighteen-acre parcel lying west of the gravel road between Lee County Road 530 and the Sisks' farmland (the Gogganses' property). The Sisks, along with David, began *1237 farming the Gogganses' property as well as their own. After approximately 1983, the Sisks routinely brought farm equipment from Lee County Road 530 south through the Gogganses' property to their farmland and then exited their farmland by traveling north up the gravel road. However, three or four years before the hearing, David planted pine trees on the Gogganses' property, which denied the Sisks access to their farmland except by the gravel road.
¶ 10. Mitchell's nephew, Bruce, testified that in 1981 he inherited his fifty-seven-acre parcel of farmland from his father, Allen. This property, located south of the 120-acre parcel and adjacent to the farmland of Mitchell and Paul, was not a part of the original Thomas tract. Bruce testified that Allen acquired the property in 1959, kept cattle on part of it, and rented the other part out as farmland. Bruce testified that Allen used the gravel road to feed the cattle and check on the property. When Bruce inherited the property, he rented it to Mitchell and Paul as farmland, and they used the gravel road to access it. Bruce testified that in 1993 or 1994, he went down the gravel road once a week with a tractor or a pickup truck to feed the cattle he kept on the property. Bruce also testified that he graded the gravel road once per year.
¶ 11. Kem owned the nine-acre parcel east of the gravel road that was formerly owned by his grandfather, Donald Priest. Kem and his wife, Iva Nell Whitten, testified that they had lived on their property since 1985 and never saw the Sisks using the gravel road until 1996, prompting Kem's immediate objection. Kem submitted photographs of large, muddy ruts in the gravel road allegedly caused by the Sisks driving heavy farm equipment down the road. Farley testified that the Sisks' farm equipment had knocked a limb off one of her trees and that their tractor tires slung mud into her yard. The Whittens had no problem with the Sisks' use of the gravel road for ordinary passenger vehicles, but they objected to them driving heavy farm equipment on the road.
¶ 12. Mitchell, Paul, David, and Bruce all testified that they and their predecessors used the gravel road without interference from anyone until the mid-nineties. Paul testified that in approximately 1994, Kem stopped him from bringing a combine header down the gravel road. Also around that time, Kem visited Paul's house and claimed to own the gravel road. Bruce testified that in 1994, he was traveling down the gravel road with a fertilizer buggy when Kem stopped him and claimed to own the gravel road. Bruce testified that he believed the gravel road was public; thus, he continued to use the gravel road after Kem's assertion of ownership. The disagreement culminated in the Sisks filing of the instant lawsuit.
¶ 13. The chancellor viewed the property. The chancellor found that because Mitchell and Grace's farmland shared a common source of title with the Whittens' land, Mitchell and Grace had an easement by necessity across the Whittens' land to access their farmland. The chancellor found that the only reasonable access that Mitchell and Grace had was across the gravel road. The chancellor also found that the conduct of the Sisks and their predecessors-in-title had satisfied all of the elements of an easement by prescription over the gravel road. The chancellor fixed the width of the easement at sixteen feet, which the chancellor found to be reasonable considering the Sisks' use of wide farm equipment and the court's duty to impose as little as possible upon the servient estate. The chancellor ordered the Sisks to maintain the gravel road and enjoined *1238 the Whittens from restricting the Sisks' use of the easement.

STANDARD OF REVIEW
¶ 14. This Court's standard of review of the decision of a chancellor is as follows:
We will not disturb a chancellor's findings unless they are ... manifestly wrong, clearly erroneous or an erroneous legal standard was applied. Nichols v. Funderburk, 883 So.2d 554, 556 [(¶7)] (Miss.2004). Where there is substantial evidence to support a chancellor's findings, [the appellate court] is without the authority to disturb a chancellor's conclusions, although it might have found otherwise as an original matter. Id. Additionally, where the chancellor has made no specific findings, [the appellate court] will proceed on the assumption that the chancellor resolved all such fact issues in favor of the appellee. Id. However, the chancery court's interpretation and application of the law is reviewed under a de novo standard. Weissinger v. Simpson, 861 So.2d 984, 987 [(¶11)] (Miss.2003).
Keener Props., L.L.C. v. Wilson, 912 So.2d 954, 956(¶3) (Miss.2005).

LAW AND ANALYSIS

I. WHETHER THE CHANCELLOR ERRED BY FINDING THAT THERE WAS CLEAR AND CONVINCING EVIDENCE THAT THE SISKS POSSESSED A PRESCRIPTIVE EASEMENT OVER THE GRAVEL ROAD.
¶ 15. The Whittens challenge the chancellor's finding that the Sisks were entitled to a prescriptive easement over the gravel road. One claiming an easement by prescription must show that the use of the property was (1) open, notorious, and visible, (2) hostile, (3) under claim of ownership, (4) exclusive, (5) peaceful, and (6) continuous and uninterrupted for a period of ten years. Biddix v. McConnell, 911 So.2d 468, 475(¶18) (Miss.2005) (citing Sharp v. White, 749 So.2d 41, 42(¶7) (Miss.1999)). The claimant must prove each element by clear and convincing evidence. Id. (citing West v. Brewer, 579 So.2d 1261, 1262 (Miss.1991)).
¶ 16. The Whittens contend that the Sisks failed to prove by clear and convincing evidence each element of a prescriptive easement. They argue that the evidence substantially showed that Donald Priest granted the Sisks permission to use the gravel road in 1965. The Whittens contend that the Sisks' subsequent use of the gravel road was based upon this permission, which was revoked by Kem. To determine whether the chancellor manifestly erred in finding each element was satisfied, we review the evidence supporting each element.

1. Open, Notorious, and Visible
¶ 17. The Whittens contend that the Sisks used the gravel road too infrequently to have constituted open, notorious, and visible use. The Sisks presented testimony that they used the gravel road on several days each spring and fall to plant and harvest crops and during the growing season to check on their crops. Though the Sisks did not use the road on a daily basis, the supreme court has held that "it is not necessary, in order to establish an easement by prescription, that the way has been in constant use, day and night, but it may be established by such use as business or pleasure may require." Rawls v. Blakeney, 831 So.2d 1205, 1210(¶16) (Miss.Ct.App.2002) (quoting Browder v. Graham, 204 Miss. 773, 780, 38 So.2d 188, 189 (1948)). Though Kem and Nell claimed to have been unaware of the Sisks' use of the gravel road until 1996, there was testimony that Kem's predecessor-in-title, Donald Priest, had actual notice *1239 of the Sisks' use. Kem's sister, Farley, testified that she was born and raised on the property and recalled the Sisks using the gravel road in the nineteen-sixties. The chancellor's finding that the Sisks' use was open, notorious, and visible was not clearly erroneous.

2. Hostile
¶ 18. Hostile use is use that is inconsistent with the title of the servient-estate owner. Moran v. Sims, 873 So.2d 1067, 1069(¶8) (Miss.Ct.App.2004). Use of property that is permissive prevents a prescriptive easement from forming. Webb v. Mearns, 944 So.2d 917, 921(¶14) (Miss.Ct.App.2006). "[U]se by express or implied permission or license, no matter how long continued, cannot ripen into an easement by prescription, since adverse use, as distinguished from permissive use, is lacking." Sharp, 749 So.2d at 42-43(¶8).
¶ 19. The Whittens argue that the Sisks' use of the gravel road stemmed from permission given by Donald in 1965 when Donald assisted in the Sisks' purchase of farmland from Willie Priest. The chancellor found that the Sisks had proven hostility because neither the Whittens nor the Whittens' recent predecessors-in-title had given their consent; however, the chancellor also stated that "there was evidence that many years ago a previous owner had given consent." The Whittens argue that Donald's placement of a wire across the gravel road was further proof that Donald controlled the road such that the Sisks' use of the road was permissive.
¶ 20. The evidence pertaining to permission was that in 1965, Donald, who owned the nine-acre parcel fronting the east side of the gravel road, told the Sisks that the gravel road was public and no one could stop them from using it. At that time, Thomas had record title to the gravel road. Thus, Donald, while mistaken about the road's status as public, communicated to the Sisks that they had a right to use the road. Donald's statement that the road was public cannot be characterized as giving the Sisks permission or consent to use Donald's property. Also, the evidence substantially showed that Donald's placement of the wire across the road did not interfere with the Sisks' use; the purpose of the wire was to exclude the general public from the catfish ponds on the 120-acre parcel, and the Sisks simply took the wire down in order to cross. While we find that the chancellor erred by finding that a previous owner had given consent, the chancellor's ultimate conclusion that the Sisks' use was hostile was not clearly erroneous.

3. Under Claim of Ownership
¶ 21. One claiming a prescriptive easement need not claim to own the land itself, but he or she must claim to own an easement. Delancey v. Mallette, 912 So.2d 483, 488(¶16) (Miss.Ct.App.2005). Clearly, the Sisks' use of the gravel road was consistent with a claimed easement across it to access their landlocked property. Also, Mitchell and Bruce testified that they performed some maintenance on the gravel road by grading it and filling holes. Maintenance activities have been held to support a finding that the use was under a claim of ownership. Moran, 873 So.2d at 1069(¶9). Additionally, as will be discussed below, Mitchell and Grace had an easement by necessity, which has been held to satisfy the requirement that the use be under a claim of ownership. Dieck v. Landry, 796 So.2d 1004, 1008(¶13) (Miss.2001).

4. Exclusive
¶ 22. For a prescriptive easement, "exclusive" does not mean that no *1240 one else used the road, but that "the use was consistent with an exclusive claim to the right to use." Moran, 873 So.2d at 1069(¶10). The evidence showed that, other than the Whittens and their guests, the gravel road was used only by the Sisks and their guests. Therefore, the evidence substantially supported the finding that the Sisks' use was consistent with an exclusive claim to the right to use the gravel road.

5. Peaceful
¶ 23. There was no objection to the Sisks' use of the gravel road from 1965 until Kem objected in the mid-nineties, long after the ten-year period of prescription had run. The evidence substantially supported the finding that the Sisks' use was peaceful.

6. Continuous and Uninterrupted for a Period of Ten Years
¶ 24. A prescriptive easement vests when the adverse use has been continuous and uninterrupted for a period of ten years. Delancey, 912 So.2d at 489(¶18). The Whittens argue that the Sisks' use of the gravel road was not continuous and uninterrupted because after 1983, the Sisks' use of the gravel road decreased due to the availability of access over the Gogganses' property. In support of this argument, the Whittens point to the Sisks' admission that they did not use the gravel road for one year in the nineteen-nineties because it was blocked due to timber harvesting on the 120-acre parcel.
¶ 25. In 1970, Mitchell and Grace began using the gravel road for access to the farmland purchased from Washburn and others. Though Bruce began using the gravel road in the nineteen-nineties, his use was tacked to that of his father, Allen, who used the gravel road for access to his farmland since at least the mid-nineteen-sixties. Arrechea Family Trust v. Adams, 960 So.2d 501, 506(¶15) (Miss.Ct.App. 2006). The Sisks' use of the gravel road was continuous and uninterrupted for a period of ten years before their usage decreased in 1983. "[A] prescriptive right to an easement is equivalent to a deed conveying such right," and runs with the land. Logan v. McGee, 320 So.2d 792, 793 (Miss. 1975). A prescriptive easement in favor of the Sisks had vested by at least 1981 because their use of the gravel road was open, notorious, visible, hostile, under claim of ownership, exclusive, peaceful, and continuous and uninterrupted for a period of ten years. Therefore, the chancellor's finding that the Sisks' use was continuous and uninterrupted for ten years was supported by substantial evidence and was not clearly erroneous.
¶ 26. Finding that all the elements of a prescriptive easement were met, we affirm the chancellor's determination that the Sisks had acquired a prescriptive easement over the gravel road.

II. WHETHER THE CHANCELLOR ERRED BY FINDING THAT THE SISKS POSSESSED AN EASEMENT BY NECESSITY OVER THE GRAVEL ROAD.
¶ 27. The chancellor found that Mitchell and Grace had an easement by necessity over the gravel road in order to access their landlocked farmland from Lee County Road 530. "[A]n easement by necessity arises by implied grant when a part of a commonly-owned tract of land is severed in such a way that either portion of the property has been rendered inaccessible except by passing over the other portion or by trespassing on the lands of another." Taylor v. Hays, 551 So.2d 906, 908 (Miss.1989). "An easement by necessity requires no written conveyance because it is a vested right for successive holders of the dominant tenement and remains *1241 binding on successive holders of the servient tenement." Dieck, 796 So.2d at 1008(¶13). The party asserting an easement by necessity has the burden to prove that he is implicitly entitled to a right of way across another's land, and he or she must show "that the tract that is blocked in its access to a public road was once joined with the tract over which the easement is allegedly necessary." Delancey, 912 So.2d at 488(¶14).
¶ 28. The chancellor found that Mitchell and Grace had an easement by necessity to access their landlocked farmland because their farmland was once part of the larger Thomas tract that abutted Lee County Road 530. On appeal, the Whittens admit that an easement by necessity arose in 1941 when what is now Mitchell and Grace's farmland was severed from the Thomas tract in a manner rendering it landlocked. However, the Whittens argue that the easement by necessity was terminated in 1983 when Mitchell and Grace obtained other access over the Gogganses' property.
¶ 29. It is true that an easement by necessity is destroyed if the necessity ceases because other access to the landlocked parcel has become available, such as by the easement holder's acquisition of adjoining property that provides access to the outside world. Taylor, 551 So.2d at 908-09. However, permission to cross the land of adjoining landowners does not constitute unrestricted access that will terminate an easement by necessity. Fike v. Shelton, 860 So.2d 1227, 1231(¶13) (Miss.Ct.App.2003). Such permission is merely a license that is revocable at will. Id. Therefore, Mitchell and Grace's easement by necessity was not destroyed by their permissive use of the Gogganses' property. We note David's and Phyllis's testimony to the effect that they, in fact, revoked the Sisks' permission to cross the Gogganses' property several years before the hearing.
¶ 30. The Whittens also challenge the chancellor's finding that because "[t]he only reasonable access Mitchell and Grace... have is across the [gravel road]," the easement by necessity should be located on the gravel road. The Whittens contend that the chancellor should have deemed the most reasonable location for the easement to be on the Gogganses' property, which was also once part of the Thomas tract. The Whittens argue that the location of the easement on the gravel road is unreasonable given the availability of the Goggans route and the fact that Mitchell's and Grace's use of the gravel road will require the Whittens to remove a fence, cut trees, and tolerate mud and potholes caused by the farm equipment. The Whittens admit that because David and Phyllis were not parties to the case, the chancellor could not have decreed that the easement be over the Gogganses' property; however, they contend that the chancellor should have recognized that the easement was most reasonably located over the Gogganses' property and on that basis declined to burden the Whittens' property with the easement.
¶ 31. In Huggins v. Wright, 774 So.2d 408, 412 (¶¶12-13) (Miss.2000), the supreme court affirmed the chancellor's finding that an easement by necessity was reasonably located across an old, established route, and if the servient owners wanted to relocate the easement from the established location to another reasonable location, they could do so at their own expense. In Huggins, other reasonable locations for the easement by necessity were available. In this case, the evidence before the chancellor established that the only reasonable location for the easement was across the gravel road. The evidence was that the gravel road had been used for *1242 access to those portions of the Thomas tract which had become landlocked by the various conveyances that had occurred beginning in 1936. As discussed above, Mitchell and Grace had acquired a prescriptive easement over the gravel road, a fact which would have rendered any relocation of their easement by necessity redundant. Given the evidence before the chancellor, the chancellor did not err by determining that the only reasonable location for the easement by necessity was over the gravel road.
¶ 32. THE JUDGMENT OF THE CHANCERY COURT OF LEE COUNTY IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANTS.
KING, C.J., LEE AND MYERS, P.JJ., IRVING, GRIFFIS, BARNES, ISHEE, ROBERTS AND CARLTON, JJ., CONCUR.
NOTES
[1] In 1970, Mitchell and Frank divided their farmland. After the division, Mitchell retained the two parcels that the brothers had acquired from Washburn and others. These two parcels, totaling forty-four acres, are a subject of this appeal. In the early nineteen-eighties, Frank's portion of the farmland was acquired by his daughter, Phyllis. Phyllis originally was a party to the fourth amended complaint, but her motion to dismiss her claims was granted by the chancellor.