GREENLEE, J., CONCURRING IN PART AND DISSENTING IN PART:
 

 ¶ 49. I concur with the majority opinion that the plaintiffs were not entitled to express drainage easements, and they were not required to proceed under either statutory mechanism regarding amendment of a subdivision plat. But dissenting, I would find that the chancellor manifestly erred when she concluded that Mayton and Maranto had failed to present clear and convincing evidence that their use of the PVC pipe and Oliver's culvert were open, notorious, and visible, and uninterrupted for at least ten years.
 
 [7]
 
 Consequently, I would remand the case to the chancellor so she could determine whether Mayton and Maranto had satisfied their burden of proof regarding the remaining prescriptive-easement elements.
 

 ¶ 50. Although relatively uncommon, prescriptive drainage rights are not unprecedented in Mississippi.
 
 See
 

 Lauck v. Gilbert
 
 ,
 
 252 Miss. 371
 
 , 395,
 
 173 So.2d 626
 
 , 638 (1965) ;
 
 Pompey Lake Drainage Dist. v. McKinney Lake Drainage Dist.
 
 ,
 
 136 Miss. 168
 
 , 177,
 
 99 So. 387
 
 , 389 (1924) ;
 
 Fratesi v. City of Indianola
 
 ,
 
 972 So.2d 38
 
 , 43 (¶ 12) (Miss. Ct. App. 2008). The first time "prescriptive easement" appears in the record is in Oliver's proposed findings of fact and conclusions of law. Oliver did not conclude that Mayton, McNeil, and Maranto had failed to raise prescriptive-easement claims. Instead, she suggested that the chancellor find that they had failed to satisfy their burden of proof. Similarly, the chancellor held that they failed to present clear and convincing evidence that their drainage was open, notorious, and visible, and it had not been continuous and uninterrupted for at least ten years. Consequently, the chancellor did not address the remaining elements. So although the appellants did not raise prescriptive-easement claims in their complaint, that theory was tried by consent.
 
 See
 
 M.R.C.P. 15(b) ;
 
 Swenson v. Brouillette
 
 ,
 
 163 So.3d 957
 
 , 963-64 (¶¶ 20-22) (Miss. Ct. App. 2014).
 

 ¶ 51. "The burden of proof needed to establish a prescriptive easement is the same as for a claim of adverse possession of land."
 
 Swenson
 
 ,
 
 163 So.3d at 964
 
 (¶ 24) (quoting
 
 Evanna Plantation Inc. v. Thomas
 
 ,
 
 999 So.2d 442
 
 , 447 (¶ 17) (Miss. Ct. App. 2009) ). "To acquire a prescriptive easement[,] the claimant must show [clear and convincing evidence] that the possession was: (1) open, notorious, and visible; (2) hostile; (3) under claim of ownership; (4) exclusive; (5) peaceful; and (6) continuous and uninterrupted for ten years."
 

 Id.
 

 "Clear and convincing evidence is ... so ... direct and weighty ... as to enable the fact finder to come to a clear conviction, without hesitancy, of the truth of the precise facts of the case."
 
 Moran v. Fairley
 
 ,
 
 919 So.2d 969
 
 , 975 (¶ 24) (Miss. Ct. App. 2005).
 

 ¶ 52. After inspecting the properties and hearing the evidence, the chancellor found that Mayton, McNeil, and Maranto failed to adequately prove that their use was open, notorious, and visible because "the [PVC] pipe is not visible nor is the direction in which it drains water." The
 chancellor also held that "no one seem[ed] to know who installed the [six-]inch PVC pipe ... or when it was installed." Thus, she concluded that it had not been in continuous and uninterrupted use for ten years.
 

 ¶ 53. I would find that under the precise circumstances of this case, the chancellor was manifestly wrong in concluding that Mayton and Maranto's use of the six-inch PVC pipe was not open, notorious, and visible, and that it had not been in continuous and uninterrupted use for at least ten years. It was uncontested that a metal pipe was under the private road in 1981,
 
 [8]
 
 it was approximately six inches in diameter, and it drained what eventually became Maranto's lot onto Oliver's. It was also uncontested that Tom Cameron had the metal pipe replaced with the six-inch PVC pipe in December 2007, both being under the private road to Oliver's home. The six-inch PVC pipe is in the same location as the previous metal version, slightly north of the small cul-de-sac that leads to Oliver's driveway. There was no testimony that it was impossible to see the six-inch PVC pipe. Oliver certainly knew that she had not installed it, and it was replaced approximately twenty years after she moved into the subdivision. The expert witnesses for both sides were able to observe it, and the parties had no difficulty describing it. A picture of the end that terminated onto Oliver's property is included in plaintiffs' exhibit twenty-two. It could not have channeled water if it was not open and exposed on both ends. Oliver testified that water plainly flowed through it onto her property. And Mayton testified that Oliver had called authorities when he had the six-inch PVC pipe flushed with water. McNeil testified that "occasionally, it takes a little manpower to shovel the debris" away from the six-inch PVC pipe. There was also testimony that the city had previously flushed the six-inch PVC pipe and the metal version that preceded it. The Pennsylvania Commonwealth Court has held that such maintenance activities - "periodically cleaning ... pipes ... every couple of years" - were sufficient to satisfy the "open, notorious, and visible" element in the context of a claim for a prescriptive drainage easement.
 
 Gehres v. Falls Twp.
 
 ,
 
 948 A.2d 249
 
 , 254 (Pa. Commw. Ct. 2008).
 

 ¶ 54. The chancellor did not analyze the remaining elements necessary to obtain a prescriptive easement. In
 
 Delancey v. Mallette
 
 ,
 
 912 So.2d 483
 
 , 488 (¶ 15) (Miss. Ct. App. 2005), a chancellor had found that a claimant failed to present sufficient evidence of the "under a claim of ownership" element. On appeal, this Court concluded that the chancellor applied the incorrect legal standard.
 

 Id.
 

 at (¶ 16). Although the
 
 Delancey
 
 Court commented on some of the remaining elements, it did not proceed to act as a fact-finder and analyze all of the prescriptive-easement elements for the first time on appeal.
 

 Id.
 

 at 488-89
 
 (¶¶ 16-18). Instead, the Court remanded the case to the chancellor for a determination whether the plaintiff had "proven all [of] the elements necessary to establish a claim for a prescriptive easement."
 

 Id.
 

 at 489
 
 (¶ 19). Thus, I would remand the case to the chancellor for further consideration of the remaining elements. Accordingly, I respectfully dissent in part.
 

 On appeal, the plaintiffs have not claimed that the chancellor erred by finding that McNeil was not entitled to a prescriptive drainage easement based on characteristics of the six-inch PVC pipe that runs beneath the private road. It was undisputed that McNeil's runoff did not flow through the six-inch PVC pipe.
 

 McNeil testified that the original metal pipe under the private road "was originally placed there by [D.W. Rochow] when he built the subdivision and when ... Leroy Davenport ... built his house, he [put] the PVC pipe that's in question across the road there[,] and it's remained functional until it rusted. At that point, Mr. Cameron was living in that house and he had the city replace it."